# UNDERWOOD *v.* METROPOLITAN NATIONAL BANK.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

No. 270. Argued and submitted April 4, 1892. — Decided April 25, 1892.

M. gave to a bank a mortgage on land owned by him to secure paper which the bank might discount. Among the paper so discounted was a note made by J., which M. had discounted, and which J. paid to the bank. The note had been given for a certificate of deposit which J. afterwards endorsed, and subsequently paid. J. claimed subrogation under the mortgage to the rights of the bank as respected the certificate of deposit: *Held*, that the claim could not be allowed; that the payment of the note to the bank by J. discharged the mortgage, so far as it was a security for the note; and that the certificate of deposit was not secured by the mortgage.

THE case is stated in the opinion.

*Mr. James F. Mister* (with whom was *Mr. Wallace Pratt* on the brief) for appellants.

*Mr. C. O. Tichenor*, for appellees, submitted on his brief.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

The Mastin Bank, a Missouri corporation, located at Kansas City, Missouri, became insolvent, and made an assignment, August 3, 1878, of all its property and assets, to one Kersey Coates, in trust for the benefit of all its creditors. The firm of John J. Mastin & Co., doing business at Kansas City, was composed of John J. Mastin and Thomas H. Mastin, the former of whom was cashier of the bank and the latter its assistant cashier. Both of them were stockholders in, and directors of, the bank.

The Mastin Bank discounted with the Metropolitan National Bank, of the city of New York, from time to time, and when the Mastin Bank failed it was liable for its endorsements

on paper so discounted by the Metropolitan Bank to the amount of over $200,000. The firm of John J. Mastin & Co. endorsed for the accommodation of the Mastin Bank all of the paper so discounted by the Metropolitan Bank. To secure such endorsements the two Mastins and their wives, on June 7, 1878, executed a mortgage to the Metropolitan Bank, covering lands owned by them in Jackson County, Missouri, and in the city of Kansas, in said county, and in Johnson County and Nemaha County, Kansas, "to have and to hold the said described real estate, with all the rights, privileges, and appurtenances thereto belonging, unto the said Metropolitan National Bank of New York, its assigns and successors forever, and upon this express condition: Whereas the Mastin Bank of Kansas City, Missouri, is indebted to the said Metropolitan National Bank as endorser on various notes, drafts, and bills which the said Mastin Bank has sold to said Metropolitan National Bank: Now, therefore, if the said Mastin Bank, its assigns or successors, shall pay or cause to be paid all notes, drafts, and bills so sold to the said Metropolitan National Bank, and shall pay or cause to be paid all notes, drafts, and bills which the said bank may hereafter sell and endorse to the said Metropolitan National Bank, then this conveyance shall be void; otherwise in full force and virtue at law." In 1879 the Metropolitan Bank brought a suit in equity in the Circuit Court of the United States for the Western District of Missouri to foreclose that mortgage as to the lands lying in that district against the Mastins and other persons. The Mastins did not question the validity of the mortgage.

Among the promissory notes so discounted by the Metropolitan Bank were two made by the firm of Johnson & Crawford, composed of Augustus H. Johnson and Robert F. Crawford, one of such notes being for $10,000, dated July 18, 1878, payable thirty days after date, at the Metropolitan Bank, to the order of Quinlan, Montgomery & Co., and endorsed by the last-named firm, by John J. Mastin & Co., and by the Mastin Bank, due August 20, 1878; and the other being for $11,185, due September 19, 1878, about which no question arises in this case.

The firm of Johnson & Crawford bought a quantity of cattle from one G. Baer, and to enable that firm to do so, it procured from the Mastin Bank the money for which the note for $11,185, above mentioned, was given. The $10,000 note above mentioned was given to the Mastin Bank for a certificate of deposit, which the bank issued to Baer, in the following terms:

"No. 4945.

"KANSAS, Mo., *July* 18, 1878.

"G. Baer has deposited in the Mastin Bank, Kansas City, Mo., ten thousand dollars, payable in c'y to the order of himself on return of this certificate, properly endorsed, thirty days after date, payable in New York exchange.

"$10,000.00.    Aug. 20.        JOHN J. MASTIN, *Cashier*.

"Countersigned: W. H. WINANTS, *Tel.*"

That certificate of deposit was taken by Baer in part payment for the cattle; but shortly after he received it, he became uneasy as to the condition of the bank, and on his application the firms of Johnson & Crawford and Quinlan, Montgomery & Co., endorsed the certificate. Before it became payable, the bank failed. Johnson & Crawford paid the amount of the certificate to Baer, and also paid the $11,185 note, at maturity, to the Metropolitan Bank, but did not pay the $10,000 note to that bank, because they had paid to Baer the amount of the certificate. The Metropolitan Bank brought suit against Johnson & Crawford on the $10,000 note. The assignee, Coates, paid to the Metropolitan Bank, out of the assets of the Mastin Bank, dividends on the notes of Johnson & Crawford, amounting to $4122.08. The Baer certificate was allowed by the assignee, who paid to Johnson & Crawford all the dividends upon it, except the last one, which he did not pay to them because he had paid dividends upon the notes to the Metropolitan Bank.

In October, 1880, Johnson having died and Jesse N. Johnson having become his administrator, one F. L. Underwood, on behalf of the firm of Johnson & Crawford, with the money of Johnson and Quinlan, paid to the Metropolitan Bank the

balance of $7603.50 due on the $10,000 note. After doing this, Underwood gave to Johnson and Quinlan a paper writing as follows:

"KANSAS CITY, Mo., *Octo. 22nd,* 1880.

"I have this day bought with the money of A. W. Johnson and C. C. Quinlan a claim based on note of Johnson & Crawford for $10,000, endorsed by Quinlan, Montgomery & Co. & J. J. & T. H. Mastin, on which certain payments have been made by the dividends of the Mastin Bank. This claim is in suit against Mastins in the hands of Karnes & Ess, and said Johnson & Quinlan are entitled to the said claim and all dividends made upon it, and this shall operate as an assignment of said claim.　　　　　　　F. L. UNDERWOOD."

Quinlan testifies that he furnished a part of the money, which he charged to Crawford; and Crawford testifies that he repaid such money to Quinlan.

When Underwood paid the $7603.50 to the Metropolitan Bank, an agreement, dated October 20, 1880, was signed by the bank, as party of the first part, and by him as party of the second part, containing the provisions set forth in the margin.[1]

---

[1] First. That the said party of the first part, as endorsee from the Mastin Bank of Kansas City, Missouri, is the owner and holder of a certain promissory note executed by Johnson & Crawford to Quinlan, Montgomery & Co., and by said Quinlan, Montgomery & Co. endorsed, and upon which said note there is a balance due of principal and interest, at this date, of $7603.50, and for which suit is now pending in the Circuit Court of the United States at Kansas City.

Second. On said note John J. Mastin and Thomas H. Mastin are also endorsers, and to secure the payment of the same, with other liabilities, said Mastins executed to said party of the first part a mortgage on certain real estate in Missouri and Kansas, and to foreclose said mortgage suits are now pending, one in the Circuit Court of the United States at Kansas City, Missouri, and one in the Circuit Court of the United States at Topeka, Kansas.

Third. For and in consideration of the sum of $7603.50 paid to said party of the first part by said party of the second part, and the payment of all costs in said suit thereon, said note so executed by said Johnson & Crawford has this day been assigned and transferred, without recourse, to said party of the second part.

In pursuance of its agreement to that effect, made October 20, 1880, the Metropolitan Bank, on February 1, 1886, filed a supplemental bill in its foreclosure suit, adding as defendants, said Underwood, Crawford, and Johnson, administrator, averring that they claimed to have acquired an interest in the subject matter of the suit and in the mortgaged premises, by virtue of an assignment to Underwood of one of the notes secured by the mortgage, in trust for Johnson & Crawford, and praying that the three new defendants might answer, setting forth their interest in the mortgaged premises or the proceeds of their sale, or be barred and foreclosed.

On the 18th of February, 1886, Underwood, Johnson,

---

Fourth. It is also further agreed, as a part of said assignment and transfer, that the said party of the second part shall release, and hereby releases, all claim or interest in so much of said mortgage as covers the real estate therein described and lying in the State of Kansas; but as to the land lying in the State of Missouri, and covered by said mortgage, the said party of the second part shall retain his interest therein, in consideration of the release of the Kansas lands, as aforesaid; and the said party of the first part stipulates and agrees that, in said foreclosure proceedings in Missouri, it will file a supplemental bill, showing this assignment of said note, and to which said party of the second part agrees to enter his appearance and make proper answer or plea thereto, so that the same may be determined as a part of said foreclosure, and so that said party of the second part may obtain such orders as he may deem necessary and proper to obtain a *pro rata* division of the proceeds arising from the decree of foreclosure.

Fifth. In all matters pertaining to said mortgage, whether by foreclosure or otherwise, it is agreed, by and between the parties hereto, that the same shall be managed exclusively by said party of the first part, without any interference or hindrance by said party of the second part: Provided, however, that nothing shall be done to impair or affect the right of said party of the second part to receive his *pro rata* share of whatever sum may be realized by the foreclosure, or otherwise, from the Missouri lands.

Sixth. It is also further agreed, by and between the parties hereto, that, except as to the Kansas lands so released as hereinbefore recited, said party of the second part shall be entitled to receive on said note a *pro rata* share on any other security held by said party of the first part for this and other indebtedness of said John J. Mastin and Thomas H. Mastin.

Executed in duplicate the day and year aforesaid.

THE METROPOLITAN NATIONAL BANK OF NEW YORK,

BY KARNES & ESS, *Att'ys.*

F. L. UNDERWOOD.

administrator, and Crawford filed their answer to the bill of the Metropolitan Bank, setting up the agreement of October 20, 1880, and claiming that thereby Underwood had been subrogated to the rights of the Metropolitan Bank as to the mortgaged property in Missouri; that Crawford and Johnson alone, as between them and Quinlan, Montgomery & Co., had become entitled to the benefit of said agreement; and that it was made with the concurrence, sanction and approval of the mortgagors, the Mastins.

The answer then gives the history of the Baer certificate of deposit and of the $10,000 note, and alleges that Johnson & Crawford and Quinlan, Montgomery & Co. paid the certificate of deposit; that the consideration of the $10,000 note, as between Johnson & Crawford on the one side, and the Mastin Bank and the Mastins on the other, failed; that the Mastin Bank received $10,000 from the Metropolitan Bank by the discounting of the note; that at the time of the agreement of October 20, 1880, payments had been made upon the note by dividends from Coates, the assignee, on said note and on the certificate of deposit, leaving due to the Metropolitan Bank on the note $7640.63 at the time the agreement was made; and that afterwards, on September 22, 1884, Coates paid a further dividend of 20 per cent to the Mastins, being $2000, on the certificate of deposit, which dividend, but for the said agreement, belonged to Johnson & Crawford, and to which the Mastins had otherwise no claim.

The prayer of the answer, as a cross-bill, asked (1) that the new defendants be subrogated to the right of the Metropolitan Bank under the mortgage; (2) that in case the payment of the said balance of $7640.63 to the said bank should not be held as binding on the Mastins, the defendants should be repaid that amount, and interest, by the bank; and (3) that they should be repaid the amount, with interest, of all the dividends received by the Mastins on the certificate of deposit.

The Mastins on October 29, 1886, put in an answer to the pleading of Underwood, Crawford, and Johnson, treating it as a cross-bill, taking issue upon its allegations of fact and law, and setting up that, on May 18, 1886, the Metropolitan Bank

had executed and delivered to the Mastins a quit claim deed releasing unto them the premises in Jackson County, Missouri, and in the city of Kansas, covered by the mortgage, the deed being stated to be made in release of, and in satisfaction for, the mortgage, "the indebtedness secured by said mortgage having been fully paid off and discharged."

Crawford and the other plaintiffs in the answer in the nature of a cross-bill put in a replication to the answer thereto of the Mastins.

Proofs were taken, and the case was brought to a hearing in the Circuit Court before Mr. Justice Brewer, who delivered an opinion, which, though found in the record, is not reported, and entered a decree dismissing the bill of the Metropolitan Bank and the answer of Johnson, Crawford and Underwood in the nature of a cross-bill, and charging the last-named three parties and the bank with costs. From that decree Underwood, Johnson, administrator, and Crawford have appealed to this court.

The Circuit Court arrived at the conclusion that it was shown satisfactorily by the evidence that the agreement of October 20, 1880, was made with the assent of the Mastins, but it found that the $10,000 note had been paid and extinguished by the makers of it, who were primarily responsible upon it; and that, as the mortgage was given to secure discounts, when the makers of the note discounted had paid it, the mortgage, as security for such discount, was at an end. It also said, that, as the Mastin Bank had given, for the $10,000 note, instead of cash, the Baer certificate of deposit, and as that certificate was executed by the Mastin Bank alone, and was not a personal obligation of the mortgagors, and as Johnson & Crawford, at the request of Baer, had endorsed the certificate of deposit, and, before that certificate matured, the Mastin Bank failed, and Johnson & Crawford took up the certificate of deposit and held it at the time the agreement of October 20, 1880, was made, and on the ground that the practical effect of that agreement was to make the partial assignment which it contained of the mortgage operate as security for the certificate of deposit, it was claimed that Johnson & Crawford, having paid

the $10,000 note, and holding the certificate of deposit, ought to be permitted to transfer to the certificate the security of the mortgage, and that the assent of the Mastins to the arrangement made by the agreement of October 20, 1880, was equivalent to an appropriation of the mortgage as security for the certificate, and entitled Johnson & Crawford to be subrogated to the rights of the Metropolitan Bank under the mortgage. But it held that the Mastins had never said or done anything to make the mortgage a security for the certificate of deposit, and that the payment of the $10,000 note to the Metropolitan Bank by Johnson & Crawford discharged the mortgage, so far as it was a security for that note.

We concur in these views. The certificate of deposit is not mentioned in the agreement of October 20, 1880. It was an obligation of the Mastin Bank, and not of the Mastins. It was not endorsed by the Mastins; and, as said by the Circuit Court, to give to Johnson & Crawford a claim under the mortgage in respect of the certificate of deposit, would be for the court to make a contract which the parties did not make, simply on the ground that the court thinks the parties ought to have made such a contract.

The debt to the Metropolitan Bank, on account of which Johnson & Crawford claimed subrogation, was their own debt, for which they were primarily liable, as makers of the note, and on which no one else was liable except as endorser. The note was paid by them as makers, and not by a third party. They seek to be subrogated to rights under a mortgage which was given to the Metropolitan Bank by the Mastins as accommodation endorsers, to secure accommodation endorsements. The payment of the note by Johnson & Crawford made it impossible for the condition of the mortgage to be broken in regard to the note; and the anomalous claim is made, that the payment by them of a debt owed by them to the Metropolitan Bank, to secure which debt the mortgage was given, instead of satisfying the mortgage in regard to that note, operates as a breach of the condition of the mortgage, which will sustain a foreclosure. No such principle can exist in a court of equity. It would be superfluous to cite authorities on the subject.

The agreement of October 20, 1880, recites that the Mastins are endorsers on the note in question, and that they executed the mortgage to secure the payment of that note, with others. The endorsement of the Baer certificate by Johnson & Crawford was made after it was delivered to Baer. They did not endorse it at the request of the Mastin Bank or of the Mastins; and, as before said, the Mastins were in no way parties to the certificate. Johnson & Crawford endorsed and paid the certificate voluntarily, and, so far as appears, without consideration. The endorsement of the $10,000 note by the Mastins, as accommodation endorsers of it for the Mastin Bank, could not, on the facts, operate as an endorsement by the Mastins of the certificate of deposit. It does not appear that the Metropolitan Bank, in executing the agreement of October 20, 1880, had ever heard of the certificate of deposit; and that agreement operated merely as a permit by the Metropolitan Bank to Johnson & Crawford to take a share of the proceeds of the sale, under the mortgage, of the property of the Mastins.

The payment to the Metropolitan Bank of the note, by Johnson & Crawford as its makers, operated to extinguish the claim and suit of that bank against them as such makers, and thus was of benefit to the Mastins as endorsers of the note; but Johnson & Crawford were in no different position after the agreement of October 20, 1880, was made, from what they were in before that time, for they paid voluntarily a debt as to which they were the primary debtors. The Mastins received nothing by reason of the agreement.

*Decree affirmed.*