**NEW YORK TITLE & MORTGAGE CO. v. FIRST NAT. BANK OF KANSAS CITY, MO., et al.**

No. 9100.

Circuit Court of Appeals, Eighth Circuit.

Aug. 13, 1931.

George S. Parsons, of New York City, and Henry S. Conrad, of Kansas City, Mo.

(L. E. Durham and Hale Houts, both of Kansas City, Mo., on the brief), for appellant.

Paul R. Stinson, of Kansas City, Mo. (Phillips, Trammell, Chizum & Price and Samuels, Foster, Brown & McGee, all of Fort Worth, Tex., I. P. Ryland, Arthur Mag, Roy B. Thomson, and Leslie C. Thurman, all of Kansas City, Mo., on the brief), for appellees.

Before STONE and GARDNER, Circuit Judges, and MARTINEAU, District Judge.

GARDNER, Circuit Judge.

In this case, the appellant, as plaintiff in the lower court, brought suit against the First National Bank of Kansas City, Mo., and the Farm & Home Savings & Loan Association of Nevada, Mo., on two causes of action. The New York Title & Mortgage Company is a corporation engaged in the business of insuring titles for compensation. The parties will be referred to as they appeared in the lower court.

Plaintiff issued two title insurance policies to the Farm & Home Savings & Loan Association, guaranteeing the loan company against loss by reason of defects in title of the mortgagors to the real estate described in the mortgages or deeds of trust involved in this suit. The mortgages and the notes, one for $40,000 and the other for $8,000, which they were given to secure, were in fact forged. When the forgeries were discovered, the plaintiff, on demand, reimbursed the loan company for the money advanced on the loans, with certain immaterial reductions. The policies contained provision for subrogation, in the event of payment by the plaintiff.

In these transactions, one Charles E. Smith, operating as a loan broker in Fort Worth, Tex., submitted to the loan company applications for these two loans, the applications being submitted separately and at different times. The first application purported to be signed by D. W. Smith, who was said to be the father of Charles E. Smith, but who, in fact, was a fictitious person. The second application purported to be signed by Charles W. Poe, who was also a fictitious person. The property was inspected by the loan company and found to be satisfactory as security for the loans. Smith agreed to furnish title insurance to protect the loans, and this he did in each case by securing a policy from the plaintiff. In securing the policies he furnished plaintiff with the purported opinion or certificate of a title examiner, to the effect that applicant had good title. This Smith accomplished by forging the name of plaintiff's approved attorney to the certificate of title. The applications so prepared were presented to and approved by the loan company, and checks were drawn and delivered to its local agent at Fort Worth, Tex., the checks in each case being drawn jointly to its agent and the supposed borrower. On receipt of the checks, the local agent for the loan company, for the purpose of enabling Smith to clear title to certain of the property, procure the title insurance, and make delivery to the borrower, indorsed and delivered them to him without securing the indorsement of the borrower. Smith then forged the names of the supposed borrowers on the back of the checks, deposited them in his own account in banks in Fort Worth, Tex., and converted the proceeds. These checks were drawn on the defendant First National Bank of Kansas City, and, after passing through several banks, were ultimately paid by the defendant bank, and charged to the loan company's account. The loan company is a nominal party, no relief being sought as against it, and the real controversy is between the plaintiff and the defendant bank.

Plaintiff bottoms its right of recovery on the equitable principles of subrogation, and urges that the defendant bank was required, at its peril, to pay the loan company's checks only upon valid indorsements, and that its payment of the two checks in question, upon forged indorsements, rendered it liable to the loan company, and that these erroneous payments were the proximate cause of plaintiff's loss.

The lower court found, among other things, that the bank, in paying the checks, was guilty of no negligence; that Charles E. Smith was plaintiff's agent in the transactions, and that the frauds committed by him were so committed within the scope of his employment; that plaintiff was negligent in the transactions in the issuance of its title policies, in that it did not see the property described in the mortgages, the supposed borrower or the lender, in that it saw no abstract of title, obtained no attorney's preliminary opinion, and did not see nor examine the purported original mortgages or trust deeds; that the attorney's certificates attached to the applications, purporting to bear the signature of Marvin H. Brown, were obviously forgeries of Brown's signature, which would

have been revealed if plaintiff had made examination and compared them with the genuine signatures on file in its office; that these acts of negligence, among many others found by the court, individually and collectively contributed to the loss of the loan company and to the loss of the plaintiff; that the primary, direct, and proximate cause of the loan company's loss was the forgery of the application, the fraudulent alterations of the preliminary opinions, the forgery of the mortgages, notes, and other loan papers by Smith, and that the acts of the bank in honoring and paying the checks were not the proximate cause of the loss. The court also found that the loan company had been negligent in these transactions; but, in the view we take of the issues, it will not be necessary to consider the details of the alleged acts of negligence of the loan company found by the lower court.

There can be no doubt of the general rule of law that the implied contract between a bank and its depositor is that the bank will pay the depositor's checks from his deposits to the persons to whom he orders payments made, and the corollary of this rule is likewise sound, that the bank will not pay the checks of its depositor upon forged indorsement of the payee's name. This was an obligation which the bank owed the loan company because of its contract with that company, and in this connection it is to be observed that there are involved in these transactions two independent contracts, the contract between the loan company and the bank, just adverted to, and the contract between the loan company and the plaintiff. Plaintiff's payment to the loan company was a discharge of its primary contract liability.

Here, then, we have separate liabilities growing out of separate contracts, the liability of the bank to the loan company, because, in violation of its contract, the bank paid forged checks, and the liability of the insurance company, because of its contract guaranteeing titles. Both of these liabilities were primary liabilities to the loan company. The accidental fact that the fraud of Smith involved both the procuring of the loans upon property, the title to which was defective, and the forging of checks of the loan company upon the bank, would not seem to be material. The plaintiff paid the loan company only what it contracted primarily to do, but now, retaining the premiums or benefit of its contract, it seeks reimbursement from the bank, on the theory that the bank, under a wholly separate and independent contract, was liable to the loan company for having paid checks on forged indorsements. The plaintiff here did not insure against the forgery of indorsements on these checks, but its contract was confined to the titles of the purported borrowers.

It is doubtful whether the mere fact that the loan company may have had two sources to which it might look for reimbursement would confer on the plaintiff the right of subrogation as to one of such sources. If we assume that neither the plaintiff nor the bank was the wrongdoer, but, by independent contract obligation, each was liable to the loan company, then the satisfaction of such primary liability by the plaintiff would not give rise to a right to recover against the bank under the doctrine of subrogation, the bank not being a wrongdoer. United States Fidelity & Guaranty Co. v. Wooldridge, 268 U. S. 234, 45 S. Ct. 489, 69 L. Ed. 932, 40 A. L. R. 1094; Underwood v. Metropolitan Natl. Bank, 144 U. S. 669, 12 S. Ct. 784, 36 L. Ed. 586; Plate Glass Underwriters' Mut. Ins. Co. v. Ridgewood Realty Co., 219 Mo. App. 186, 269 S. W. 659.

But if there were any doubt as to the soundness of this position, we think it clear that plaintiff is not entitled to invoke the remedy of subrogation, because that right is an equitable one, and is applicable in cases in which one party is required to pay a debt for which another is primarily answerable, and which, in equity and good conscience, ought to be discharged by the latter. It is the method which equity employs to require the payment of the debt by him who in good conscience ought to pay it, and to relieve him whom none but the creditor could ask to pay. It cannot, as a matter of right, be invoked in all cases without regard to circumstances, but only in cases in which justice demands its application, and the rights of one asking subrogation must have a greater equity than those who oppose him. As said by this court in American Surety Co. v. Citizens' National Bank, 294 F. 609, 616: "The right of subrogation is an equitable right, and where equities are equal the right does not exist and there can be no relief."

It is to be borne in mind that, not only did the court find that the defendant bank was guilty of no negligence in the transactions involved, but the bill of complaint, as amended, contained no allegations charging the defendant bank with such negligence. The primary cause of plaintiff's loss was the forgeries committed by Smith, and we think the case is ruled by National Surety Co. v.

Arosin (C. C. A.) 198 F. 605, 609, and National Surety Co. v. State Savings Bank (C. C. A.) 156 F. 21, 14 L. R. A. (N. S.) 155, 13 Ann. Cas. 421.

In the Arosin Case, under the doctrine of subrogation, it was sought to hold the bank because it had paid out county funds on instruments forged by the county treasurer. The instruments were spurious, and the indorsements thereon were forgeries. The lower court held that there was no negligence on the part of the bank, and for that reason the plaintiff was not entitled to recover, and on this ground this court sustained the lower court. In the course of the opinion in that case, it is, among other things, said:

"The case as to the other defendants and appellees is this: Bourne made certain false redemption warrants in much the same way that he manufactured the refunding orders. The names inserted in these warrants were with two exceptions fictitious. He wrote the names of the fictitious persons on the backs of the warrants, presented them to the county treasurer, Arosin, defendant and appellee, who paid them. This payment was sometimes made by the treasurer in cash, but more frequently by check to the order of the fictitious person on the defendant and appellee the National German-American Bank which was a depository of the county funds. When the payment was made by check, Bourne indorsed the name of the fictitious payee thereon and collected the check, sometimes by presenting it directly to the National German-American Bank, but more frequently by presenting it to some other bank. In all cases, however, the National German-American Bank eventually paid the checks and charged the amount thereof to the county. * * *

"It seeks to hold the National German-American Bank on the ground that it wrongfully paid out money of the county on forged indorsements.

"The same rule, however, must be applied to these three defendants as was applied to the State Savings Bank. The primary cause of the loss was the manufacture by Bourne of the false warrants and orders. For his official misconduct the plaintiff was liable. The evidence does not show any negligence on the part either of Arosin or of the National German-American Bank. There can be therefore no recovery against either of them."

Here, as in National Surety Co. v. Arosin, supra, the bank paid the checks on which the indorsements were forged, without negligence, and the circumstances surrounding the transactions involved do not give rise to any superior equities in favor of the plaintiff; nor can it be said that in good conscience the defendant bank ought to stand the loss.

Many other questions have been elaborately briefed and ably presented by counsel for either party, but, in our view, the equities in favor of the defendant bank constitute an insuperable barrier to plaintiff's right of recovery, and we refrain from discussing the many other questions presented.

The judgment of the lower court is therefore affirmed.