WASHINGTON MECHANICS' SAV. BANK v. DISTRICT TITLE INS. CO. et al.

No. 5759.

Court of Appeals of the District of Columbia.

Argued April 7, 1933.

Decided May 29, 1933.

Rehearing Denied June 12, 1933.

Guy Mason and Robert A. Littleton, both of Washington, D. C., for appellant.

Hugh H. Obear and Jo. V. Morgan, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a judgment against a collecting bank for the proceeds of a check collected by it upon a forged indorsement.

It appears that on March 27, 1929, the appellees, who are title insurance companies acting conjointly, and are hereinafter called the title companies, had occasion in the ordinary course of business to pay to one Johnson the sum of $1,576.84 in settlement of a note. They were informed that one De Veile held the note for collection as agent for Johnson, and that payment should be made to him. They accordingly prepared and signed a check for the amount in question, payable to De Veile, and placed it in the hands of a messenger for delivery to him upon receipt of the note. The messenger at once called at the office of De Veile for the purpose of delivering the check and receiving the note. Upon reaching the office he was informed that the note was no longer in De Veile's possession but had been returned to Johnson.

The messenger thereupon returned the check to the companies' settlement clerk, who placed it in the "settlement jacket," which was put in the clerk's desk until closing time, and then with its contents was placed in the companies' safe. The settlement clerk did not look for the jacket again until in September 1929, when the companies were called upon by an attorney to pay the note for which the check had been written. Thereupon the settlement clerk opened the settlement jacket in order to find the check which he supposed was in it. After an extensive search he reported to his superior officer that he was unable to find the check, and he was told to draw a new check to the holder of the note for the amount thereof, which was done.

It is the unmistakable effect of the testimony that one Hagerty, then employed in the office of the title companies, had stolen the check; that one Crowley had received it from Hagerty, and had deposited it for credit with the appellant bank where he kept an account. When so deposited the check bore a forged indorsement of the name of De Veile, the payee named in the check. The appellant bank deposited the check in its account with the District National Bank of Washington, which in turn indorsed the check and sent it through the clearing house of Washington for collection from the National Bank of Washington, which was the drawee bank. The latter bank paid the check and charged it to the account of the title companies on August 17, 1929. The appellant bank, accordingly, thereby received the proceeds of the check, and credited the same to the account of Crowley.

After the check was paid by the drawee bank and charged to the account of the title companies, it was returned to them as a canceled check bearing the forged indorsement of De Veile.

Thereupon the title companies, as plaintiffs in the lower court, sued the appellant bank for the conversion of the proceeds of the check. The defendant bank filed a plea which in effect denied the allegations of the declaration for want of information concerning the truth of the same, and charged neglect upon the part of the plaintiffs because of their delay in making known the forgery to the defendant.

The case went to trial upon this issue, but in the course of the trial it was conceded by the plaintiffs that they had been fully reimbursed for the amount of the check by the bonding company which was surety upon Hagerty's bond as employee of plaintiffs. This fact did not appear in the pleadings in the case, nor did either party request leave to amend its pleadings in the course of the trial. The trial court, however, charged the jury in part as follows: "The fact that the plaintiff has been reimbursed by a bonding company which bonded the employee Hagerty and has made some agreement with the bonding company about bringing this suit does not prevent the plaintiff from recovering. It might if it chooses sue in its own name; and what it may do with the amount received does not concern us here at all."

The jury returned a verdict for the plaintiffs; judgment was entered by the court upon the verdict; and this appeal was taken.

██ In our opinion it is clear that, when the appellant bank collected the check bearing the forged indorsement, a right of action ac-

crued to the title companies against it for the recovery of the proceeds, as for money had and received or for conversion.

In Merchants' Bank of Washington, D. C., v. National Capital Press, Inc., 53 App. D. C. 59, 288 F. 265, 266, 31 A. L. R. 1066, it appeared that the bookkeeper of plaintiff extracted certain checks from the mail, indorsed the checks without authority in plaintiff's name, cashed them at defendant bank, and appropriated the proceeds to his own use. The checks were collected by defendant from the respective banks on which they were drawn. A judgment against the collecting bank for the amount of the checks was affirmed by us. In the opinion, written by Mr. Justice Van Orsdel, we said: "The checks, when received and collected by defendant, were the property of plaintiff, and plaintiff's title therein could not be defeated by a forged indorsement. Plaintiff's title remained the same as it was before the forgery was committed; hence, when defendant received the money on the checks, it had no more title to the money than it had to the checks, and plaintiff could recover the amount collected on the checks in an action for money had and received. This rule is sustained generally in the states, and we have not been cited to any federal authority to the contrary."

In Morse on Banks and Banking, vol. 1, § 284, p. 491, it is said: "If a negotiable instrument having a forged indorsement comes to the hands of a bank and is collected by it, the proceeds are held for the rightful owners of the paper and may be recovered by them although the bank gave value for the paper, or has paid over the proceeds to the party depositing the instrument for collection."

This rule applies in the case of a check which is stolen from the drawer before it has passed to any other person. In Morse on Banks and Banking, vol. 2, § 424, p. 1069, it is said: "If, before the title to a check has passed to any other person than the drawer it be dishonestly or fraudulently obtained from him, and the money collected on it through a forged indorsement, even though the party who finally actually collects the money is an innocent holder for value, the drawer may maintain his action to recover the amount from the party so having collected the money. Nor does it affect the drawer's right to recover that his bank has been guilty of such laches in notifying the forgery to the innocent receiver of the money as to have lost any right it might otherwise have had to recover from that receiver." Talbot v. Bank of Rochester, 1 Hill (N. Y.) 295; Schaap v. First National Bank, 137 Ark. 251, 208 S. W. 309; National Union Bank v. Miller Rubber Co., 148 Md. 449, 129 A. 688; Wagner Trading Company v. B. P. National Bank, 228 N. Y. 37, 126 N. E. 347, 9 A. L. R. 340; Johnson v. Bank of Hoboken, 6 Hun (N. Y.) 124; Farmer v. Bank, 100 Tenn. 187, 47 S. W. 234; Crisp v. State Bank of Rolla, 32 N. D. 263, 155 N. W. 78; Gustin-Bacon Mfg. Co. v. First National Bank of Englewood, 306 Ill. 179, 137 N. E. 793; National Metropolitan Bank v. Realty Appraisal & Title Company, 60 App. D. C. 86, 47 F.(2d) 982.

However, it appears, as aforesaid, that, before the title companies brought any action against the appellant as collecting bank to recover the proceeds of the forged check, they were fully reimbursed for their loss by the bonding company, which stood as surety upon the employee's bond of Hagerty. The title companies, therefore, were not entitled in their own right to recover a second reimbursement for the same loss. The question which remains, however, is whether the bonding company was subrogated, by reason of the facts, to the rights of the title companies against the appellant bank; and whether an action based upon such subrogation may be brought by the title companies in their own name for the benefit of the bonding company.

We think that a consideration of the facts in this case leads to the conclusion that the bonding company was not entitled to be subrogated to the claims of the title company against the appellant bank, and consequently that the judgment rendered in favor of the title companies in the lower court is erroneous.

Subrogation is an equitable right and is applicable where one party is required to pay a debt for which another is primarily answerable and which the latter should in equity discharge. The remedy cannot, as a matter of right, be invoked without regard to the circumstances of the particular case. It can be invoked only in cases where justice demands its application and where the equities of the party asking subrogation are greater than those of its adversary.

In the case of the New York Title & Mortgage Company v. First National Bank of Kansas City, Mo. (C. C. A. 8th) 51 F.(2d) 485, 487, 77 A. L. R. 1052, it was held that a title insurer, after paying a loss to a loan association resulting from forged notes and mortgages, was not subrogated to the rights

of the association against the bank based on the bank's payment of the association's checks on forged indorsements of the loan broker. The court said: "It is doubtful whether the mere fact that the loan company may have had two sources to which it might look for reimbursement would confer on the plaintiff the right of subrogation as to one of such sources. If we assume that neither the plaintiff nor the bank was the wrongdoer, but, by independent contract obligation, each was liable to the loan company, then the satisfaction of such primary liability by the plaintiff would not give rise to a right to recover against the bank under the doctrine of subrogation, the bank not being a wrongdoer. United States Fidelity & Guaranty Co. v. Wooldridge, 268 U. S. 234, 45 S. Ct. 489, 69 L. Ed. 932, 40 A. L. R. 1094; Underwood v. Metropolitan National Bank, 144 U. S. 669, 12 S. Ct. 784, 36 L. Ed. 586; Plate Glass Underwriters' Mut. Ins. Co. v. Ridgewood Realty Co., 219 Mo. App. 186, 269 S. W. 659."

In American Surety Company of New York v. Citizens' National Bank of Roswell, N. M. (C. C. A. 8th) 294 F. 609, the defendant bank, a designated county depositary, paid county treasurer's checks drawn by him in his official capacity, by its cashier's checks and drafts on its New York correspondent, and the county treasurer forged the names of the payees on the cashier's checks and drafts and converted the proceeds thereof to his own use, but the bank had no notice of wrongdoing. It was held that the defendant bank was not liable to the county, it not being either drawer, payee, or indorser on the cashier's checks or the drafts, and defendant not being under any duty contractual or otherwise toward it; and even assuming that the county could have recovered from the bank the amount which the bank was paid by the county treasurer for the cashier's checks and drafts, the surety on the statutory bond of the treasurer, who had made his shortage good, would not be subrogated to such a right, in view of the rule that where the equities are equal there is no right to subrogation. The court observed that a bill to enforce a right to subrogation must show a superior equity in the plaintiff to withstand demurrer.

In Northern Trust Co. v. Consolidated Elevator Co., 142 Minn. 132, 171 N. W. 265, 4 A. L. R. 510, it was held that the equities of one who buys grain in the open market, in good faith and for full value, from a warehouseman with whom it was stored, are superior to those of the surety on the bond of the latter, given for the protection of those storing grain with it, where such warehouseman has become insolvent and the surety has been required to pay the amount of the bond.

In Stewart v. Commonwealth, 104 Ky. 489, 47 S. W. 332, it appeared that the deputy court clerk had manufactured witness' certificates. He forged indorsements of the payees and sold them to Stewart. Stewart was paid the amounts by the commonwealth. The commonwealth then recovered from the surety on the clerk's bond. Thereafter the sureties sued Stewart to recover from him on the claim that the commonwealth might have recovered from him and that they were subrogated to such rights. The court held that Stewart was not liable.

In American Bonding Co. v. Bank, 47 Mont. 334, 133 P. 367, 46 L. R. A. (N. S.) 557, a court clerk manufactured jury certificates and sold them to the bank. The county took up the certificates and paid the bank without discovering the fraud. The surety company on the clerk's bond made the loss good and then sued the bank. It was held that, although the county could recover from the bank, as between the surety company and the bank the equities were at least equal, and the bank was not liable to the surety. Cf. Baker v. Surety Co., 181 Iowa, 634, 159 N. W. 1044; Plate Glass Underwriters' Insurance Co. v. Ridgewood Realty Company, 219 Mo. App. 186, 269 S. W. 659; Oglesby v. Foley, 153 Ill. 19, 38 N. E. 557.

We are unable to see any particular in which the equities of the bonding company are superior to those of the appellant bank. Neither one was guilty of culpable negligence in the transaction. The bonding company, being in the business of guaranteeing for a consideration the faithful conduct of employees, enabled the defaulting employee to hold the position of trust which he occupied. The appellant bank was acting consistently with the ordinary course of banking business in accepting a check, whose genuineness it had no reason to doubt. It cannot be said that either one of these parties, as compared with the other, was primarily liable for the default. It follows that the equities of neither are superior to the equities of the other in the transaction. It appears that, had the appellant bank paid the loss to the title companies, it would not have been entitled to recover from the bonding company by reason of subrogation, nor is the bonding company entitled by subrogation to recover from the appellant bank.

In this view of the case we conclude that

the appellees as plaintiffs below failed to sustain their claim against the appellant bank. The judgment is therefore reversed, and the cause is remanded for further proceedings not inconsistent herewith.