## CITY NAT. BANK OF HOUSTON v. MOODY.

### No. 10551.

Court of Civil Appeals of Texas. Galveston.

March 10, 1938.

Rehearing Granted April 7, 1938.

Appellees' Motion for Rehearing Denied April 21, 1938.

Raymond E. Buck, of Fort Worth, for appellant.

L. B. Moody, of Houston, pro se.

CODY, Justice.

This is a statutory trespass to try title suit brought by appellee against appellant on July 30, 1935, in one of the district courts of Harris county, to recover title to and possession of 4 certain lots in block B, Smith and Gibbons addition to the town of Harrisburg. Appellant's answer consisted of a general demurrer, general denial, and plea of not guilty. The trial was without a jury, and resulted in a judgment for appellee. The court, at the request of appellant, filed findings of fact and conclusions of law, to all of which appellant excepted. Hereinafter appellee will be designated plaintiff, and appellant defendant, as they were in the trial court.

The agreed common source of title was J. W. Wilson.

On February 9, 1926, by four deeds of trust, Wilson conveyed the four lots in controversy to Joe M. Green, trustee, to secure the payment of promissory notes therein described. Thereafter, on November 7, 1933, under circumstances proved at the trial, R. J. James, as substitute trustee, undertook to sell and convey the property in controversy to Gulf Lumber & Building Company, and in his trustee's deeds to said company it is recited that Green had been removed as trustee, and that James had been appointed by the owner of the first lien notes (National Bond & Mortgage Corporation) described in and secured by the aforesaid deeds of trust. The Gulf Lumber & Building Company joined by the National Bond & Mortgage Corporation, thereafter, on June 26, 1935 (more than a month before plaintiff filed this suit), quitclaimed their interest in the property to defendant, and defendant thereafter, on February 29, 1936, being pendente lite, by special warranty deed, conveyed the property to the First National Bank of Houston, as defendant's successor in trust. And then, on March 27, 1936, the First National Bank, as such successor trustee, conveyed the property to Michigan Realty Company, which company is now the owner of the interest represented in this suit by defendant.

As to plaintiff's claim of title, Wilson, the agreed common source, on May 5, 1926, some months after having conveyed the property to Joe M. Green, trustee, conveyed it to Geo. F. Simons, but subject to the aforesaid first lien securing the National Bond & Mortgage Corporation notes, and to a second lien securing notes of Gerner Lumber Company. Plaintiff, having become the owner of all second lien notes against the property, in a suit against Simons took judgment on April 18, 1932, thereon, and foreclosed the second liens. The National Bond & Mortgage Corporation was in possession of the property at the time, under circumstances hereinafter stated, and was not made a party to such foreclosure proceedings. Plaintiff bought in the property at such foreclosure proceedings, and claims superior title thereto, in virtue of the title acquired at such foreclosure sale.

At this point it has become obvious that, if the foreclosure of the first lien (under which defendant and defendant's successors in interest claim title) was valid; defendant's title is superior, and should have prevailed. With reference to the validity of the first lien foreclosure, the following facts were given in evidence: That prior to February 9, 1931, plaintiff, who was then the owner of the second lien against the property, was in possession of the property, collecting the rents therefrom, and paying them to the National Bond & Mortgage Corporation on account of interest due it. It further appears that plaintiff paid the principal as well as the interest installments on the National Bond & Mortgage Corporation notes—the first lien notes—until the maturity of the final balance which he refused to pay after demand, as he concluded the property was not worth enough to justify him in paying off the first lien to protect his second lien, and he stated that he preferred for the National Bond & Mortgage Corporation to take the property; and said corporation did shortly thereafter take possession of the property, and it proceeded to collect the rents and revenues therefrom, and has continued to collect· such rents, either for itself or its successors in interest. While no one testified by what authority plaintiff was in possession of the property in February, 1931, collecting rents, it seems unreasonable to suppose that the tenants renting the property would have incurred double liability therefor by paying them to plaintiff, except they were satisfied that the owner had authorized such collection. At any rate, plaintiff was then in peaceable possession of the property when he surrendered such possession to the National Bond & Mortgage Corporation. Now, as heretofore stated, Green was the trustee ·under the four deeds of trust. At the time he was named trustee in said four deeds of trust, he was also an executive officer of the National Bond & Mortgage Corporation, and was being named as trustee in the deeds of trust generally, which it took to secure the loans it made. However, he severed his connection with such loan company in January, 1930, and at the time of doing so he executed a blanket resignation as trustee, undertaking to resign as trustee in all the deeds of trust taken to secure National Bond & Mortgage Corporation loans, wherein he had been named as trustee. On November 7, 1933, R. J. James, who was himself connected with the loan company, was appointed as substitute trustee in the four deeds of trust, and undertook,·as such substitute trustee, to foreclose the first lien securing the loan company's notes. And in the trustee's deeds .executed and delivered by him to the purchaser at such foreclosure sales, namely, Gulf Lumber & Building Company, it is recited, as heretofore stated, that Joe M. Green *had been removed* as trustee under said deeds of trust, and that the National Bond & Mortgage Corporation had appointed James as trustee.

Now, while it would doubtless have been competent for the loan company to have provided in its deeds of trust (wherein Green had been named as trustee) that in case Green ceased to ·be one of its executive officers he should thereupon cease to be trustee therein, and that said corporation should thereupon have the power to name a successor trustee or substitute trustee, it is elementary that the power of a trustee to sell out property to pay off a debt secured by a deed of trust must be found within the terms of such deed of trust, and that such terms will be strictly construed. But there was no such provision in the four .deeds of trust to Joe M. Green, trustee. On the contrary, in these it is provided that in case of inability, refusal, or failure of the trustee to act, a substitute trustee may be named by the holder of the indebtedness, or the greater part of it, by an appointment and designation in writing, and that the recitals in the conveyance made to the purchaser either by the trustee or substitute trustee shall be full proof and evidence of the matters therein stated, and no other proof shall be required of the request by the holder of said indebtedness on the trustee to enforce the trust or of the advertisement for sale, or of the inability, refusal, or failure of the trustee or substitute trustee to act, or of the resignation of the trustee, or the appointment of the substitute as therein provided, either as to the legality of his appointment or otherwise, or the contingency which brought about the failure or inability of the trustee to act, any prerequisite of the sale shall be presumed to have been performed. So the fact that Green severed his connection with the National Bond & Mortgage Corporation in the early part of 1930, and at the same time executed a blanket resignation as ·trustee in all the deeds of trust of the National Bond & Mortgage Corporation, could not confer on that company the power to substitute as trustee, in Green's place, another one of its officers. For, as stated in Bemis v. Williams, 32·Tex.Civ.App. 393, 74 S.W.

332, 333, "It is the unbroken rule that a power of sale given in a deed or mortgage must be strictly followed in all its details. * * * The trust must be executed in the mode and upon the exact terms and conditions prescribed in the deed of trust. * * In this case the power of sale vested in the trustee remained dormant and inactive until called into action by the request of the beneficiary. *Until that request was made, he had no power to act, and without that request there could not be a failure or refusal on his part to perform the powers given him by the deed of trust.*" (Italics ours.) See, also, Boone v. Miller, 86 Tex. 74, 23 S.W. 574; Bracken v. Bounds, 96 Tex. 200, 71 S.W. 547; Chestnutt v. Gann, 76 Tex. 150, 13 S.W. 274; as merely a few of the numerous cases that might be cited.

■ As Green was never requested to act as trustee after default in payment of the first lien notes, no inability, failure, or refusal to act on his part ever occurred, which entitled the loan company to appoint a substitute trustee. Consequently, there was never any authority in James to act as substitute trustee, to make the sale of the property, to execute trustee's deeds to the purchasers, to make recitals in such deeds having the evidentiary effect provided for in the deeds of trust. The question of whether, under the terms of the deeds, the recitals in the trustee's deeds were established as true prima facie will be hereafter discussed, when we come to the question of pleading. But it is certain that, when plaintiff proved that no request had ever been made on Green to act as trustee, he proved that the substitute trustee was without actual authority to make sales under such deeds of trust, and to make such trustee's deeds.

■ It does not follow, however, that, because the substitute trustee's sale was void, the possession of the purchaser in virtue thereof is illegal. "'Although considerably modified in some jurisdictions, especially where a third person is the purchaser, it is the general rule that a purchaser at a sale in pursuance of an invalid mortgage foreclosure proceeding, whether he is the mortgagee or a third person, and whether the mortgage constitutes a mere lien on the land or carries the legal title thereto, upon taking possession is entitled to all the rights and is subject to the duties of a mortgagee in possession.' The Texas decisions extend the equitable right to third persons, as well as to mortgagees, who purchase at void foreclosure proceedings, by treating the mortgage as still in effect and subrogating the purchaser to the rights of the mortgagee to the extent of the purchase money paid at the foreclosure sale." Jasper State Bank v. Braswell, Tex.Com. App., 111 S.W.2d 1079, 1084. The trial court's holding in this case, to the effect that defendant had no right of possession to the property, was doubtless based on McCammant v. Roberts, 87 Tex. 241, 27 S.W. 86, upon which plaintiff here strongly relies, and upon the holdings in Galloway v. Kerr, Tex.Civ.App., 63 S.W. 180, and Calhoun v. Lumpkin, 60 Tex. 185, which cases the court in Jasper State Bank v. Braswell, supra, indicates do seem to justify the inference that possession is unlawfully obtained when obtained by means of a void foreclosure proceeding. In the Braswell Case, however, the court held that, notwithstanding such seeming support, the doctrine, that possession obtained by a purchaser through a void foreclosure is unlawful possession, has never been sanctioned by the Supreme Court. And under the authority of the Braswell Case we hold that the possession of defendant, who has succeeded to the rights of both the first mortgagee and the purchaser at the void foreclosure sale, is a lawful possession, a possession which it and its successors in interest are entitled to maintain until the first mortgage debt is paid off on the one hand, or until the purchase price paid at the void foreclosure sale is repaid. This right defendant and its successors in interest still have, unless it has been lost by the failure of defendant to ask therefor by appropriate pleadings. The question of pleading will be discussed later.

■ Plaintiff, in defense against the right of defendant and its successors in interest to possess the property, further contends that, as the notes of the National Bond & Mortgage Corporation were installment notes and the last installment thereon had become due for more than four years before he filed suit, such notes, by force of article 5520, Vernon's Ann.Civ. St., must conclusively be presumed to have been paid. Conceding, for the sake of argument, for the moment, that, by force of article 5520, the first lien notes are conclusively presumed to have been paid, it does not follow that such conclusive presumption will cut off inquiry as to the manner in which they have been paid, or by whom. Plaintiff himself calls attention to the fact that the evidence in this case

shows these first lien notes have been paid. By this we take it that he means the evidence shows that in each instance of foreclosure under the four deeds of trust the purchaser at the foreclosure sale bid the property in for $1,000 per lot, or a total of $4,000. Such payment as this, if it be a fact that there was only $1,000 due on each first lien note, is not such a payment as would cut off the right of such payor (purchaser at the void foreclosure sale) to be subrogated to the rights of the payee of such notes, and to its liens against such property. However, the point which plaintiff seeks to raise has been foreclosed against his contention in the Braswell Case, supra. It was there held that the statute which plaintiff invokes was intended primarily for third persons who may acquire liens against, or purchase, the mortgaged premises. Plaintiff is not such a third person. He acquired his liens as subordinate to those under which defendant holds. He surrendered possession of the property to defendant's predecessor in interest, and at the time of so surrendering made the statement that the property was not worth the amount of the first lien. He, of course, had the right later to change his purpose, and sue the owner of the property without making the superior lienholder a party. But such owner himself had not the right to wait four years after the notes had matured, and then dispossess the first mortgagee whose possession had during such time been peaceable, or dispossess the purchaser at the void foreclosure sale, without tendering the amount of the unpaid lien, or of the purchase price at the foreclosure sale. (And, as stated before, defendant has succeeded to both such rights.) If the owner of the property had no such right himself, plaintiff, by foreclosing the owner's rights, could acquire no such right.

Plaintiff further contends that this case is now moot, and to support such contention calls attention to the following: That this suit was filed on July 30, 1935. That thereafter, on February 29, 1936, defendant by special warranty deed conveyed the property in question to the First National Bank in Houston, as successor trustee, and said bank, as such successor trustee, on March 27, 1936, conveyed it to Michigan Realty Company. That this case was thereafter tried in the court below on July 23, 1936, and this appeal is by defendant. It was only after the case was tried in the court below and plaintiff had obtained judgment there, and the appeal to this court was perfected, that plaintiff advanced the proposition that the case is moot as to defendant, which now owns no interest in the property. If defendant is without any interest in the subject matter of the suit now, it is equally true that defendant had no interest in the property at the time, and for some months before, the case was tried below. Had the point been raised and urged in the trial court, and a judgment of dismissal rendered there, no injury would thereby become visited on defendant's successor in interest and no advantage gained by plaintiff from such dismissal. But if the appeal is dismissed, after plaintiff has obtained judgment below, defendant's successors in interest would be cut off from the defenses now urged on appeal, and the issues here raised would become res judicata. Article 7391, R.S.1925, provides: "Any final judgment rendered in any action for the recovery of real estate shall be conclusive as to the title or right of possession established in such action upon the party against whom it is recovered, and upon all persons claiming from, through or under such party, by title arising after the commencement of such action."

As the same cause for now holding the case moot as to defendant also existed for holding it so moot on the trial, it necessarily follows that, if the case is in fact moot, instead of dismissing the appeal, it would become our duty to reverse the judgment of the trial court in favor of plaintiff, and render judgment here which the trial court should in such case have rendered, namely, dismissing the cause—not the appeal. However, plaintiff's claim that this case has become moot by reason of the transfer of defendant's interest during the trial is in effect a claim that such transfer worked an abatement of the cause of action. The transfer by a litigant of his interest in land is not a ground of abatement. Tex.Jur. Vol. 1, pp. 81, 82. In the early case of Lee v. Salinas, 15 Tex. 495, a defendant in suit, brought to recover a house and lot, raised the objection that plaintiff did not own the title to the property, as he, plaintiff, had conveyed the same to a Mrs. Dwyer during the pendency of the suit. The court there said: "The title at the time of * * * the commencement of the action is the question to be tried. If that be good the plaintiff is entitled, as a general rule, to a recovery. And if he has assigned or

transferred his interest in the meantime, it would seem, on the general principles of law in relation to the effect of conveyance by either party pending the suit, that plaintiff would still be entitled to a recovery enuring to the benefit of the vendee. * * * It would be tedious to trace this doctrine [pendente lite, nihil innovetur] through its modifications, as found in the cases. For the case before us it is sufficient to state the general rule. It is immaterial by which party the assignment is made. The effect on the purchaser is the same; and if he be bound by a decree against his vendor, he ought to have the benefit of one in his favor." The cases cited in this connection by plaintiff are not in point, and are therefore not discussed.

From what has heretofore been said, it appears that defendant and defendant's successors in interest are in peaceable possession, and have the rights both of a first mortgagee and of a purchaser at a void foreclosure sale. However, the right of defendant to hold possession of the property until his debt is first paid was not pled. As was stated by the Supreme Court in Fuller v. O'Neil, 69 Tex. 349, 6 S.W. 181, 182, 5 Am.St.Rep. 59, "If, however, the appellant had equities which entitled him to require the plaintiff to pay his debt before recovering the property, he should have set them up in his answer. He was not entitled to such affirmative relief under the plea of not guilty. Under this plea, a defendant may introduce anything applicable to the action of trespass to try title to defeat the title of his adversary; but 'if he wishes to assert an independent equitable right not involved in the issue to title directly in controversy, he should present the facts by proper averment.' [Citing authorities.] To ask that plaintiff be required to pay the debt which purported to be extinguished by the trust sale was to invoke the equitable powers of the court for the relief of the defendant. This could be done in an action of trespass to try title under our system of procedure, but not under the plea of not guilty, as it did not defeat the right of the plaintiff to recover, but admitted it subject to the adjustment of equities between the parties. It is unlike the case of a mortgagor who seeks to recover property of the mortgagee rightfully in possession under a deed absolute upon its face. There the burden of showing payment of the debt is

upon the plaintiff, and he must do so as against the plea of not guilty, as under that plea the defendant has shown an apparently good title. Here the defendant sets up a deed void upon its face, which does not defeat the action, and does not entitle him to possession, and has no right to relief on the face of his title papers, and can obtain it only by a prayer that the plaintiff be required to pay his debt before recovering the property." The holding just quoted is unmistakable; and if the four trustee's deeds are void on their face, it is controlling here. From the recitals in the trustee's deeds we are unable to conclude that they show prima facie power in James, substitute trustee, to sell out the property, and execute and deliver such trustee's deeds. While it is recited in them that Green had been removed as trustee, and James had been appointed trustee by the National Bond & Mortgage Corporation, it clearly appears from the deeds of trust that the power to appoint a substitute trustee depended upon certain fixed and enumerated contingencies. And no such contingency as justified the appointment of a substitute trustee was recited in the trustee's deeds as having occurred. Therefore, on their face, they give notice that they are not executed under the power provided in the deeds of trust. Defendant and its successors in interest were entitled to hold possession of the property until the debt secured by the lien, or at least until the price paid at the foreclosure sale, was paid. But this right is an equitable right, and to secure its benefit defendant required affirmative equitable relief at the hands of a court of equity. We are constrained to hold that defendant is not entitled to prevail on equities it failed to plead.

Defendant urges that, since a defendant in a trespass to try title case is entitled to prove up the homestead character of property under a plea of not guilty without pleading such character, it should be allowed the benefit of its equities under the plea of not guilty. The answer to this contention is that the homestead exemption is a constitutional, a legal, right. Being a legal right, it can be claimed by a defendant under a plea of not guilty. In other words, to secure the benefit of the homestead exemption a defendant does not need affirmative relief from a court of equity.

Defendant also urges that plaintiff, having surrendered possession of the property

to defendant's predecessor in interest with the statement that it was not worth the amount of the first lien, is now estopped to recover title and possession. While the defense of estoppel is available under the plea of not guilty, we fail to see that the elements of estoppel have been proved. Reliance on such statement cannot have been the cause of the invalid foreclosure by the National Bond & Mortgage Corporation.

Judgment of the trial court is affirmed.

Affirmed.

PLEASANTS, C. J., absent.

## On Motion for Rehearing.

CODY, Justice.

We have carefully examined the motion for rehearing of appellant, who was referred to as defendant throughout our original opinion. We now find it convenient on motion for rehearing to refer to appellant, as appellant. As appellant, under the ruling made in our original opinion, represents its successors in interest, such interest will be referred to as belonging to appellant, even though at the times referred to such interest may have passed to appellant's successor in interest, in this opinion.

■ We remain unable to see how the recitals, contained in the four trustee's deeds executed by the substitute trustee, can, under the facts of this case, be taken as establishing the legality of the trustee's sales, prima facie. The deeds of trust did not purport to authorize the appointment of, or after appointment to empower, R. J. James, or any other substitute trustee, to sell out the property, except upon the contingency of the inability, refusal, or failure of the original trustee to act, after being called on. The attempted appointment of James to act as substitute trustee was not even recited in the trustee's deeds to have been made upon the inability, refusal, or failure of the trustee to act, but the statement, to the contrary, was that the original trustee had been removed. And since the recitals in the trustee's deeds did not establish, even prima facie, the appointment of R. J. James as substitute trustee, the provisions in the deeds of trust to the effect that the recitals in the conveyance made to the purchaser, either by the trustee or substitute trustee, shall be proof of the matters therein stated, etc., were not shown, even primä facie, to apply to any conveyance made by James, who was only recited to

have been appointed *on removal* of the original trustee. That is to say, before it can be contended that the recitals in the trustee's deeds should be given the effect contemplated in the deeds of trust with respect to deeds executed by a duly appointed substitute trustee, such trustee's deeds would at least have to make out a prima facie valid appointment of a substitute trustee.

■ We also fail to see why it was not competent for appellee to attack the validity of the trustee's deeds, notwithstanding the absence of any pleading on his part assailing them. Appellant itself tendered them in evidence, as being valid conveyances, without having pleaded them. They were offered in evidence as links in appellant's chain of title; and it was incumbent on appellant to offer them in evidence as muniments of its title, notwithstanding they were not pleaded. We cannot see why appellee should not be permitted to object to them being received in evidence, on the ground that the sales which they purport to consummate were void, and consequently were not muniments of title and afforded appellant no right of possession, without having first pleaded such invalidity. Such a right on the part of appellee is but the necessary correlative to the right of appellant, under the plea of not guilty, to offer to prove such deeds, without the necessity of having first plead them.

We have become convinced, however, that Fuller v. O'Neil, 69 Tex. 349, 6 S.W. 181, 182, 5 Am.St.Rep. 59, upon the authority of which we largely based our decision of affirmance on original hearing, does not have the broad effect we ascribed to it. The Fuller Case dealt with an action of trespass to try title brought against Fuller by Mrs. O'Neil to recover a lot of ground. To her action Fuller, as defendant, simply plead a demurrer and not guilty. Then, after plaintiff had proved title in herself, defendant attempted to deraign title from her and her husband through a deed of trust given by them to one Williams, trustee, to secure a debt due from them to defendant, and a sale had thereunder, at which defendant became a purchaser. When the trustee's deed to defendant was offered in evidence, it was objected to on the grounds that it showed on its face that the trustee's deed was not made by the trustee named in the deed of trust, but by another person purporting to act as the trustee's agent, when no authority had been conferred on the trustee to delegate his powers. This objection

752

was sustained. It was held that such deed, void on its face, did not entitle defendant to possession. It does not appear from the report of the case if defendant was in possession of the property, though an action brought in trespass to try title does, of course, charge that defendant is in possession, and the plea of not guilty admits possession. But the action of trespass to try title is artificial and fictional with respect to allegations of facts, and the right to make proof of facts not pleaded. And the common practice is for an owner in possession to bring suit in trespass to try title against defendants, not in possession, to clear his title from adverse claims. But however that may have been in the Fuller Case, the defendant there took the untenable position that the legal title to the property was in Williams, the trustee; and that consequently plaintiff's remedy (her title being merely equitable) was in equity; and that she could not recover without first doing equity by tendering to defendant the debt secured by the deed of trust. It was in response to this contention that the Supreme Court (after showing that a deed of trust is a mere lien in Texas which leaves the title in the mortgagor) held: "If, however, the appellant had equities which entitled him to require the plaintiff to pay his debt before recovering the property, he should have set them up in his answer." In other words, the defendant in the O'Neil Case was seeking to assert an equity of subrogation in property that he had bought in at a void sale, under a plea of not guilty. And the court held this could not be done, which holding has been several times reaffirmed, notably in Wilkin v. Geo. W. Owens & Bros., 102 Tex. 197, 114, S.W. 104, 115 S.W. 1174, 117 S.W. 425, 132 Am.St.Rep. 867. Just why the defendant in the Fuller Case did not claim to own the debt, and the lien securing its payment, does not appear. But he assumed the position that his purchase of the property at the void trustee's sale extinguished the debt and lien. This we know, because he there contended that plaintiff was not entitled to recover because of her failure to tender him such debt, secured by a deed of trust. The court's holding, therefore, went no further than to sustain the trial court's exclusion of the deed when offered in evidence, and to hold that, in order to assert an equity of subrogation in property that had been unlawfully sold, the facts must be pleaded.

We have held in our former opinion that the proof in this case failed to prove that the trustee's deeds conveyed good title. If that is correct, appellant cannot justify its possession of the property in virtue of these deeds. However, trespass to try title is a possessory action, so, where the proof shows that a defendant in such an action is in peaceable possession of the property in litigation, and is the owner of an unpaid debt secured by a lien thereon, such defendant is entitled to retain such possession until its lien is paid. Braswell Case, cited in our former opinion. See, also, Crafts v. Daugherty, 69 Tex. 477, 6 S.W. 850. The proof in this case shows that the Gulf Lumber & Building Company bought in the property at the void trustee's sale, and further, that a month before this present suit was filed, such company, joined by the National Bond & Mortgage Corporation—the original owner of the first lien indebtedness—quitclaimed the property to appellant. So appellant thereby became vested not only with the equity of subrogation to whatever rights that remained in the National Bond & Mortgage Corporation after the void trustee's sale, but succeeded to such rights also by virtue of the quitclaim deed. Even under the doctrine of subrogation the void sales of the four lots by the substitute trustee were effective to entitle the purchaser to the debt secured by the deed of trust liens on the land, and the right to sue thereon. Howard v. Stahl, Tex.Civ.App., 211 S.W. 826, 829. See also Fox v. Kroeger, 119 Tex. 511, 35 S.W.2d 679, 681, 77 A.L.R. 663. The Fox Case is not directly in point, as it related to the situation of where a surety is compelled to pay the debt of his principal. However, there can be no difference in principle between the applicability of the doctrine of subrogation to the case of payment by a surety of a principal's obligation, and of its applicability to the case of the payment by a purchaser at a void trustee's sale of the debt secured by a lien on the land undertaken to be sold, so as to entitle such purchaser to the debt, and the lien securing its payment. The Texas rule, announced in the Fox Case, is that, "where the surety pays the debt of the principal, he has his election to either pursue his legal remedies and bring an action in assumpsit;" (or) "he can prosecute an action on the very debt itself, and in either event he stands in the shoes of the original creditor as to any securities and rights of priority." Hence, in the present case, both under the doctrine of subrogation, and by virtue of the quit-

claim deed from the National Bond & Mortgage Corporation, appellant became vested with the debt and the lien which secured its payment.

 The action of trespass to try title being possessory, a defendant, under a plea of not guilty, is entitled to justify his possession by proof of any facts which show he has the right to remain in possession of such property. In the instant case, as appears from our former opinion, the proof shows that appellant was in peaceable and lawful possession of the property; and its possession was justified by virtue of its ownership of the unpaid indebtedness, and lien securing its payment; and it was entitled to remain in possession until such indebtedness was paid. Appellant did not require the aid of a court of equity to place it in possession; it had been placed in possession by appellee. Had appellant not been in possession, then it would have been necessary for it to have plead the facts, for in such case it would have had to invoke its equity of subrogation to entitle it to assert its lien, and its right of foreclosure; but being in possession, under proof of facts indicating such possession to be lawful so long as its lien was unsatisfied, and the action being possessory, and requiring no affirmative aid of a court of equity to award it the possession which appellee had himself given, it was entitled to maintain such possession until appellee tendered payment of its secured debt.

It is unnecessary for us to pass upon our power to reverse the judgment of the trial court because the case was tried on the theory by appellant that the trustee's deeds were valid, and by the trial court that possession by a purchaser at a void trustee's sale was necessarily unlawful. We believe that, under the plea of not guilty, appellant was entitled to the benefit of the proof that it was lawfully in possession by virtue of its lien, with the right to so remain until its debt was paid, and that appellant required no affirmative relief from a court of equity to enable it to maintain a possession which appellee himself had given appellant's predecessor in interest.

Appellant's motion for rehearing is accordingly granted, and the judgment of the trial court is reversed, and the cause remanded for a new trial.

Motion granted; cause reversed and remanded

PLEASANTS, C. J., absent.

On Appellee's Motion for Rehearing.

We have carefully examined appellee's motion for rehearing. We did not base our holding at the hearing of appellant's motion for a new trial on the fact that appellee placed appellant's predecessor in interest in possession of the property. We merely recognized and applied the rule that a defendant in trespass to try title suit can avail himself of any defense under a plea of not guilty which does not require affirmative equitable relief to make it available. The decisive point is, therefore, that appellant is in peaceable possession of the property, and has the right to retain such possession until its debt is paid. Appellee's motion for rehearing is overruled.

Appellee's motion for rehearing refused.

PLEASANTS, C. J., absent.