**BROUSSARD et al. v. AMERICAN NAT. INS. CO.**

No. 10893.

Court of Civil Appeals of Texas. Galveston.
Nov. 16, 1939.

Rehearing Denied Dec. 7, 1939.

W. D. Gordon and Howth, Adams & Hart, all of Beaumont, for appellants.

Frank S. Anderson and Chas. G. Dibrell, Jr., both of Galveston, and Orgain, Carroll & Bell, of Beaumont, for appellee.

GRAVES, Justice.

This appeal is from a judgment of the district court of Chambers County, sitting without a jury, whereby appellee was awarded a recovery against the appellants of the title to and possession of two tracts of land, aggregating 199.46 acres, lying in Chambers County, 173.34 acres of it being in the Anson Taylor league and labor, and the other 26.12 acres in the Andrew Weaver labor; the appellants, in turn, having been denied any recovery on their cross-action in trespass to try title against the appellee for either tract.

In support of its judgment the court filed findings of fact and conclusions of law, which findings as such have not been challenged by either side as not supported by the evidence—no statement of facts at all having been brought to this court—the controversy on the appeal being waged solely upon whether or not the judgment, along with its attending conclusions of law, is sound.

The controllingly material ones of the stated findings may be thus, in substance, reproduced:

"In 1912 A. L. Schwartz conveyed to D. L. Broussard, Jr., the lands in controversy, in part payment of which Broussard executed vendor's lien notes to Schwartz and in the deed a vendor's lien was retained to secure their payment.

"In July, 1914, said vendor's lien notes being in part unpaid, the Insurance Company, upon request and agreement of D. L. Broussard, Jr., paid the balance thereon to L. W. Schwartz, said payment being made by draft drawn on it by D. L. Broussard, Jr., in favor of L. W. Schwartz. Coincident therewith, and as a part of the transaction, D. L. Broussard, Jr., and wife, executed said notes and delivered to the Insurance Company a deed of trust to Frank Webb, trustee, on said lands to better secure the notes described, all of which were of date July 13, 1914, and said deed of trust was filed for record in Chambers County, July 14, 1914, and duly recorded.

"D. L. Broussard, Jr., and wife executed the two renewals and extension set forth in plaintiff's pleading and that D. L. Broussard, Jr., made payments from time to time up to April, 1921.

"Upon the 8th day of January, 1915, D. L. Broussard, Jr., conveyed said land to D. L. Broussard, Sr., in which deed it was recited that D. L. Broussard, Sr., assumed the payment of the outstanding vendor's lien notes.

"D. L. Broussard, Sr., at no time assumed the responsibilities of ownership of said land; at no time did he take or have possession of said land; he did not render it for taxes, nor at any time pay taxes thereon, or in anywise exercise any right of dominion over the same.

"D. L. Broussard, Sr., did not at any time ever have possession of said land, and at no time after the execution of said deed asserted any claim to the land in controversy, or at any time ever offered any objection to the claim of ownership or the possession of said land by the Insurance Company.

"Said two tracts of land adjoined, and after the purchase by D. L. Broussard, Jr., in 1912, he took possession of same, which possession continued until 1921, during which time said land was under fence. In 1921 D. L. Broussard, Jr., abandoned said land and any right, title, and interest he had therein, and removed therefrom.

"In 1922, said land being abandoned by D. L. Broussard, Jr., the Insurance Company filed suit wherein D. L. Broussard, Jr., and wife, Effie Broussard, and Gulf Refining Company were defendants, seeking judgment against D. L. Broussard, Jr., on said above described notes and for foreclosure of the deed of trust lien, said suit being No. 38039 on the docket of the district court of Galveston County. D. L. Broussard, Sr., was not a party to said suit and was not affected thereby. On the 7th day of April, 1922, plaintiff recovered judgment for $3,724.64, with interest against D. L. Broussard, Jr., and for the foreclosure of the deed of trust against the defendants. On the 1st day of August, 1922, order of sale was issued out of the district court in said cause to the sheriff or constable of Chambers County, and the sheriff, acting under the same, sold the property on the 3rd day of October, 1922, to the Insurance Company and deed was duly made by such sheriff to said company and said order of sale, sheriff's return, and deed were filed, and recorded in the Deed Records of Chambers County.

"Immediately after the sale of said lands, the lands having theretofore been abandoned by D. L. Broussard, Jr., and D. L. Broussard, Sr., not having any possession of same or making any claim thereto, the Insurance Company paid off and discharged all delinquent state and county taxes on the property, said taxes being delinquent then for the years 1918, 1919, 1920, and 1921, 'and otherwise assumed, in relation to said land, the responsibility of ownership and exercised dominion thereof, and beginning with the year 1923 it assessed said land for taxation and paid all taxes thereon as they matured and before delinquency down to and including the year 1937', and paid delinquent taxes to Trinity River Irrigation Company for the years 1918, 1919, and 1920, all of which delinquent taxes prior to the time of the purchase by the Insurance Company were assessed to D. L. Broussard, Jr., and, exclusive of the year 1937, it had paid in taxes the total sum of $1,813.77.

"During the crop year of 1925, one Pinckney, under lease agreement with the Insurance Company, lived upon said land and raised a crop on a portion of same. He lived there almost a year before September 1, 1925, (entry being in the fall of 1924). On September 1, 1925, the Insurance Company, by written lease, leased the land to G. M. Stephenson, who entered upon the land, plowing a portion of it for crop planting. While the lease was for

only one year, Stephenson, without surrendering said land, continued to use it thereafter, though in an unfenced condition, until the spring of 1931, although about the year 1928 he made another lease with the Insurance Company of said lands, in which J. H. Blair was also associated. The land was continuously used under said lease for grazing purposes, said persons at all times recognizing the title of the Insurance Company, under whom they entered.

"On the 31st day of March, 1931, the Insurance Company by written agreement leased the land to Guy Frezia; there was associated with him in said lease, although not named in it, George Stephenson and J. H. Blair, and shortly thereafter they enclosed said land together with certain other lands leased and controlled by them, which enclosure was made by the construction of fences (portion of existing fences being used by consent of owners) upon three sides of the enclosure and Double Bayou being used as a barrier upon the west side of the enclosure. Double Bayou as so used for the west boundary and barrier of said pasture formed for all practical purposes a barrier against grazing cattle and was such barrier as commonly used in that section of the country as a barrier against cattle.

"Said tenants paid to the Insurance Company $25.00 per year as rent on said land, and a lease was renewed for the following year and rent paid thereon, and Frezia entered into another lease with the Insurance Company covering the period of time from March 31, 1933, to March 30, 1934, in which Stephenson and Blair were also associated with Frezia, as was the case in the 1931 lease. For two years after the fencing of the land by Stephenson, Blair and Frezia, in the year 1931, the land was used by such parties for grazing purposes, there being in said pasture continuously from said time from 200 to 300 head of cattle belonging to such owner. The pasture contained about 1500 acres of land.

"After two years, Frezia, who had entered and held title under the Insurance Company, removed his cattle and at said time removed a portion of the fence enclosing the land, and thereupon George M. Stephenson and J. H. Blair, who continued the use of the land and pasture under their entry under lease from the Insurance Company, removed a portion of the fence theretofore built south of an old road extending

east and west immediately north of the pasture as same was originally fenced by Frezia, Stephenson and Blair, and replaced the fence taken down by Frezia, but in so doing extended the pasture across an old public road then little used, which entered the pasture as reconstructed on the east side and extended across same to Double Bayou on the west. The bridge across Double Bayou originally used by the users of said road, had been destroyed by fire prior to the time of fencing said lands in 1931, and in so extending the pasture north of the road, they extended the use of Double Bayou as a barrier on the west, north of the old road. The Bayou north of the road was not of such a nature as to form an absolute barrier against cattle and other stock. When the pasture was extended as above, a gate was placed across the old road, which remained for a short while, which road at that time was little used.

"'From the time of the enclosure of the land in controversy as herein found, in April, 1931, until the time of the trial of this suit, George M. Stephenson (until the time of his death 1936), and his wife and son thereafter, and J. H. Blair under lease agreement with the Insurance Company, had the actual use and possession of the land in controversy for grazing purposes and did so use and possess the same.'

"'The Insurance Company from the time of its purchase at sheriff's sale in October, 1922, continuously asserted claim of ownership of the land in controversy and exercised the right of dominion over the same and after its first entry and possession it has not surrendered its possession or claim to said land, but same has been in good faith continuously maintained and asserted.'

"Upon the 7th day of April, 1937, D. L. Broussard, Sr., joined by his wife, executed a deed to said land to A. D. Hawkins, which deed recited a consideration of $10.-00, but Hawkins paid no actual consideration for said deed; at the time of the taking of said deed D. L. Broussard, Sr., advised A. D. Hawkins that if D. L. Broussard, Jr., had conveyed said land to him he did not know anything about it. On May 24, 1937, during the pendency of the suit, A. D. Hawkins and W. F. Peyton, for a recited consideration of $10.00 and other good and valuable considerations, conveyed to C. W. Howth, M. G. Adams, Lamar Hart, and Mike Daughtry an undivided

one-half interest in the land in controversy, but neither A. D. Hawkins, W. F. Peyton, nor any of the persons named as grantees, testified in the cause and there was no evidence other than the deed showing any consideration was paid for said deed. At the time of the making of the deed to A.D. Hawkins by D. L. Broussard, Sr., and the subsequent deed above named, the Insurance Company was in the actual and exclusive possession of the lands mentioned.

"The Insurance Company through its tenants was continuously in possession of said land from April, 1931, to time of trial, and it was continuously being used by it through tenants. However, the court further found that, because the use of the Bayou as a barrier north of the old road referred to was not of such use as to put a true owner upon notice, that the Insurance Company did not have for a continuous period of five years such possession of said land as matured in it title under the five-year statute of limitation.

"The land was principally usable for rice land and grazing, but after 1921, because of lack of irrigation facilities, it was not usable as rice land and was practically useable only for grazing purposes."

The conclusions of law, in his verbis, were these:

"1. That the defendants in this suit have 'the legal record-title to the land in controversy'

"2. That the Insurance Company has not matured in itself a title by adverse possession under any statute of limitation.

"3. That from the time of its original entry through its tenant, Pinckney, to the time of the filing of this suit, and at said time the plaintiff, Insurance Company, was a mortgagee in possession, but the defendants cannot recover the land without payment of the debt.

"4. That the defendants, neither in their answer to plaintiff's suit, nor in their cross-action, having exercised or claimed any right of redemption, nor by pleading tendered any remaining amounts due on said above-mentioned notes, or offered to pay same, or prayed for adjustment of equities, but, to the contrary, pleaded the bar of limitation against plaintiff's cause of action, and by way of cross-action said defendants having sued for said lands without tender of the amount due on said note, are not entitled to any adjustment of equities.

"5. I further conclude that plaintiff, Insurance Company, is entitled to judgment for the title and possession of the lands described in plaintiff's first amended petition, and the defendants as cross-plaintiffs take nothing on their cross-action to recover of original plaintiff, Insurance Company, the lands sued for."

It is thought the controlling question the appeal presents is whether or not the appellee—as against appellants' claims to own the land down under the deed thereto from Broussard, Jr., to Broussard, Sr., as to which the trial court concluded they had "the legal record-title to the land in controversy"—was correctly found and held to have been in the position of a mortgagee-in-possession of the land, hence entitled to recover it as such against appellants, who neither paid, tendered, nor offered to do equity concerning the appellee's established vendor's lien indebtedness against the title.

Under the state of the record and its unchallenged findings of fact, it is concluded that the trial court's judgment was correct; true, the appellee formally sued in trespass to try title as plaintiff, to which the appellants, as defendants, responded by cross-action, likewise declaring in trespass to try title that they owned the land; but the appellee further—in an alternative pleading that became the primary declaration of its cause of action upon the court's holding that the defendants held the record-title—set up fully its claim to having been such a mortgagee-in-possession and entitled to all the privileges, rights, and immunities inhering in that status as against the appellants' stated claims; in doing so, it averred specifically that it was such a mortgagee-in-possession, setting out substantially the matters and things as averments which the learned trial court, after hearing the testimony, matured into the findings of fact upon that subject, as the same have hereinbefore been quoted.

Wherefore, there was no lack of either supporting pleading or evidence to entitle it to so sue in maintenance of such possession, and to recover the land as against those who in no manner answered or met that declared-upon cause of action; Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329; Connor Bros. v. Williams, 130 Tex. 572, 112 S. W.2d 709, 711; City National Bank v. Moody, Tex.Civ.App., 115 S.W.2d 745; in other words, the appellants ignored entire-

ly the appellee's claim to having been such a mortgagee-in-possession, and based their cause upon the wholly independent consideration that Broussard, Sr.,—down under whom they all claimed—had not been a party to the appellee's foreclosure suit in 1922, consequently that they themselves were strangers and third parties to the whole claim of the appellee to being such a mortgagee-in-possession, and that their title down under the deed from Broussard, Jr., to Broussard, Sr., was entirely unaffected thereby.

■ This answering position is deemed to be unsound, in that it was both pled and proved that Broussard, Sr., who is one of the appellants here, in his relied-upon deed from his son of January 8, 1915, as part of the contract thereby evidenced between them, expressly in that instrument, which promptly went to record, assumed and agreed "to pay off and discharge all those certain outstanding vendor's lien-notes given (by Broussard, Jr.) in payment for the hereinafter described tracts or parcels of land", the notes themselves being specifically described, together with the liens securing them.

These very liens, which thus between those two parties to that Broussard deed were agreed to constitute the original purchase-money liens against the land, as undisputedly thereafter novated and at all times kept alive, were the liens the appellee pled and recovered upon in this judgment.

In such circumstances, this court is prone to hold that, as applied to the uncontroverted findings here, the mere fact that Broussard, Jr., so conveyed this land to his father, who thus assumed the payment of the appellee's vendor's lien debt against it, but never did so pay, nor ever claimed any ownership of or exercised any dominion over the land itself, did not deprive the appellee as such a mortgagee in lawful possession of the right of both occupying and maintaining that position—not only toward Broussard, Sr., but also toward the other appellants, who hold under him. This conclusion, by analogy at least—is thought to be supported by these authorities: Connor Bros. v. Williams, 130 Tex. 572, 112 S.W.2d 709, 711; Murrell v. Kelly-Goodfellow Shoe Co., 18 Tex.Civ.App. 114, 44 S.W. 27; Majors v. Strickland, Tex.Civ.App., 6 S.W. 2d 133, 135; Duke v. Reed, 64 Tex. 705; Jones on Mortgages, 8th Ed., Section 886, Vol. 2, p. 219.

Broussard, Sr., and all those holding with him under that deed were thus of record charged with notice that Broussard, Sr., was not a third party as affected the vendor's lien indebtedness so still outstanding in and held by the appellee, along with its actual possession of the land itself continuously down from at least 1924 until the trial of this suit in 1938.

Neither, upon like or similar considerations, did the foreclosure of appellee's mortgage in 1922, to which appellant Broussard, Sr., was not a party, destroy or injuriously affect, to appellants' advantage, the rights of the appellee as such a mortgagee-in-possession; this for the main reason that appellee actually took possession under that foreclosure, which it steadfastly maintained until the trial of this cause, while Broussard, Sr., despite his recited assumption of the outstanding vendor's lien indebtedness against the land, never paid that, nor ever exercised any other duty or privilege as to the land thereafter—Broussard, Jr., having finally abandoned it to the appellee in 1921; see the Braswell, Williams, and Moody cases, cited supra.

■ Under the cited holdings, it would seem to make no difference as to the operation of this rule, even were the 1922 foreclosure held to be void, as appellants' contend, because, as they assert, the property was the homestead of Mr. and Mrs. Broussard, Jr. However, this court is unable to see eye to eye with the claim, despite the trial court's finding that it had been the homestead of the junior Broussards from its acquisition by them until they abandoned it as such in 1921, for two reasons: (1) Such homestead character had been removed by abandonment one year before such foreclosure; (2) by the unattacked finding upon that feature, the indebtedness to secure the payment of which the foreclosure was invoked, represented the still-unpaid original vendor's lien notes the Broussard juniors had given for the deferred part of the purchase-money for the property; Flanagan v. Cushman, 48 Tex. 241, 247; Johnson v. Portwood, 89 Tex. 235, 248, 34 S. W. 596, 600, 787; Woods v. West, Tex. Com.App., 37 S.W.2d 129.

■ It follows also that appellants' claims to having been such third parties, because the others of them than Broussard, Sr., were in no way obligors upon nor directly bound to pay such debt of Broussard, Jr., are unsound; they, by the holdings of our Supreme Court, are in no

better position than would have been Broussard, Jr., the original obligor, or Broussard, Sr., the assumer of the original debt, hence they cannot defeat the rights of appellee as a mortgagee-in-possession without paying the debt due it, on the claim that the original notes are barred by limitation. Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329; City National Bank v. Moody, Tex.Civ. App., 115 S.W.2d 745; Vanderwolk v. Matthaei, Tex.Civ.App., 167 S.W. 304, writ denied; Duke v. Reed, 64 Tex. 705; Connor Bros. v. Williams, 130 Tex. 572, 112 S.W.2d 709, 711; Murrell v. Kelly-Goodfellow Shoe Co., 18 Tex.Civ.App. 114, 44 S.W. 27, 30; Majors v. Strickland, Tex. Civ.App., 6 S.W.2d 133, 135; Jones on Mortgages, 8th Ed., Sec. 886, Vol. 2, p. 219; 41 C.J. 613.

The record-title found by the court to have been in appellants was, therefore, merely a naked one, without attending power in them either to possess, appropriate, or to otherwise exercise any dominion over the land—they not having overcome in any required respect the appellee's superior right by virtue of being a mortgagee-in-possession.

These conclusions require an affirmance; it will be so ordered.

Affirmed.