CLAIBORNE PARISH SCHOOL BOARD v. FIDELITY & DEPOSIT CO. OF MARYLAND et al.

No. 5796.

Circuit Court of Appeals, Fifth Circuit.

May 6, 1930.

E. P. Lee and S. L. Herold, both of Shreveport, La. (Lee & Gilmer, of Shreveport, La., on the brief), for appellant.

P. M. Milner, of New Orleans, La., and E. Wayles Browne, of Shreveport, La., for appellees.

Before BRYAN and FOSTER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge.

This was an action by the appellee (plaintiff) against the appellant and others as defendants, for the recovery of amounts paid by the appellee to certain laborers and materialmen upon the construction of school buildings of the appellant under a building contract, with one Casey; the performance of the contract having been secured by a bond issued by the appellee. The contractor, Casey, completed the work and there was due him in the hands of the appellant an amount of approximately $12,000, for which he gave an order to the Planters' Bank of Haynesville, and which the appellant paid to the bank on April 3, 1924. The appellee claimed to be entitled to said fund to reimburse itself for amounts it was compelled to and did pay on judgments rendered against it as surety for the contractor, Casey, aggregating $10,202.54. The plaintiff claimed that the payment to the bank by the ap-

pellant on the order of the contractor was an unlawful diversion of the fund as to it by the appellant and this was the basis of the suit.

A question as to the federal jurisdiction was presented. The plaintiff after paying off the judgments obtained by the laborers and material furnishers had taken conventional assignments of their claims, and this was alleged in its petition. If the basis of the suit was the conventional assignments taken by the plaintiff, the assignors, being citizens of Louisiana, and the defendants being citizens of the same state, under section 24 of the Judicial Code (28 USCA § 41), federal jurisdiction would be lacking. The District Judge sustained the federal jurisdiction (11 F.(2d) 404) upon the ground that the right of action was not derived through the conventional assignments of the Louisiana citizens but was an independent, equitable right of the appellee's in the fund, which was charged to have been unlawfully diverted by appellant, through the building contract and the bond securing its performance. The question on the plea to the jurisdiction, as well as upon the merits, is whether the plaintiff had a cause of action against the defendants without the need to resort to the conventional assignments through a lien created by the original transaction between the appellant, Casey, and the appellee, upon the fund that was paid the bank. All the defendants, except appellant were dismissed from the case, and the judgment of the District Court, the case having been tried without a jury on stipulated facts, was against appellant alone.

The contract for the erection of the school building and the bond to secure its performance were executed under Act No. 224 of 1918 of the Legislature of Louisiana. The bond was twofold. It secured to appellant the performance of the contract, and it also secured in favor of subcontractors, laborers, and materialmen the payment by the original contractor of amounts due them. The building contract provided that on or about the first day of each month, 85 per cent. of the value of labor and material then incorporated in the work should be paid the contractor, less previous payments; that on substantial completion of the building, 95 per cent. less previous payments should be paid him, and that forty-five days thereafter, provided the work was fully completed and the contract fully performed, the balance due under the contract should be paid him. It is the unpaid balance due Casey from appellant and paid the bank by appellant on Casey's order which is in controversy. Casey owed the bank for money loaned to him during the progress of the work. The public building act provided for the record in the mortgage office of the certificate of completion of the building and its acceptance by the authority, and that all claims against the contractor should be filed within forty-five days thereafter; that if claims were filed during that period, the claimants should be brought into court by a concursus proceeding; if none were filed, the authority was authorized to pay the balance to the contractor. In this case, the certificate of completion and its acceptance were filed for record and recorded, but in the record of conveyances instead of mortgages. No claims were filed within the forty-five day period thereafter, but claims were filed after the forty-five day period, and were brought to the notice of appellant before appellant paid the balance of the fund to the bank. It did so upon the reliance that it had the right to do so, as advised by counsel, no claims having been filed within the forty-five days. If the appellee had an equitable lien on the fund, representing the retained percentage, to which it had the right to look for reimbursement for amounts due and unpaid subcontractors and others from the original contractor, and which the appellee was compelled to pay and did in fact pay, under the requirement of the bond, and if the appellant with knowledge of the fact that materialmen and laborers of Casey were unpaid in excess of the amount of the retained percentage, which the appellant knew the law required the appellee to pay, though the claims had not been filed within the forty-five days, paid the balance to the bank on Casey's order, the bank having no lien on the fund, the payment would be in derogation of appellee's rights in the fund and an unlawful conversion of it, of which appellee would have a legal right to complain.

We think this was the effect of the tripartite transaction between appellant, Casey, and appellee. The bond not only secured in favor of the obligee the performance of the building contract, it also secured in favor of subcontractors, laborers, and materialmen the payment of their claims, if not paid by the contractor, and this obligation was absolute as to appellee, though the claims were not filed within forty-five days from the recordation of the completion and acceptance of the work. The retention of the percentage was both for the purpose of securing reimbursement to the appellee, if

it was compelled to pay such unpaid claims, and for the purpose of securing to the appellant performance of the building contract. The appellee would have had a right of subrogation, without having taken assignments from such claimants to their rights in the retained fund, under articles 3052 and 3053 of the Louisiana Civil Code and under the general principles of equity. Prairie State Nat. Bank v. U. S., 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Henningsen v. U. S. Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547. Nor could the fact that claimants did not timely file their claims, and so lost their rights against the retained fund, prevent the appellee from relying on its equitable right to be subrogated, since the Louisiana statute under which the bond was given, made the appellee liable to the claimants in spite of such neglect on their part. Not only did appellee have a right of subrogation, but it had a direct interest and equitable lien in the fund itself. Its bond required it to pay claimants and the construction of the statute made this obligation absolute. The retained percentage was for the purpose of securing from the original contractor performance of the building contract, one term of which was the payment of the claims of laborers and materialmen. It was to the interest of appellee that these claims be paid, to relieve it of liability therefor, under its bond. The appellee had the right to insist upon the retention and application of this fund to respond to one of its intended purposes, viz., the payment of claimants, so long as the appellee stood to suffer loss by such breach of the building contract by the contractor. If no such claims were filed within the forty-five days and appellant had no actual knowledge of the existence of any which would entail liability on the appellee, a payment of the fund to the contractor or its nominee might not be in derogation of appellee's rights. On the contrary, a payment of the balance to the contractor or to the bank, with actual knowledge that there were claims outstanding and unpaid, which the appellee would be compelled to pay, and that it would have to resort to the fund to be reimbursed therefor, would be a wrongful payment as to appellee. The fund was in the possession of appellant for the joint protection of itself and appellee, and it could not lawfully part with the fund to the bank which had no prior right in it, to the detriment of the appellee, which it knew would have occasion to resort to it, to secure reimbursement for amounts appellee would be compelled to pay out un- der the terms of its bonds by the terms of which the fund was provided for its security in that respect. The bank's rights in the fund, if any, did not arise until the acceptance of Casey's orders or until the payment to the bank. Appellee's rights arose upon the giving of its bond to secure appellant in the performance of Casey's contract. Prairie State Nat. Bank v. U. S. (U. S. v. Hitchcock), 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412.

We think the District Court had jurisdiction and that the case was correctly ruled upon the merits.

Affirmed.