UNITED STATES FIDELITY AND GUARANTY COMPANY, APPELLANT, v. FIDELITY NATIONAL BANK AND TRUST COMPANY, RESPONDENT. —109 S. W. (2d) 47.

Kansas City Court of Appeals. October 15, 1937.

*Hanna & Hurwitz* for appellant.

*McCune, Caldwell & Downing, Lynn Webb* and *R. S. Eastin* for respondent.

SPERRY, C.—Appellant, a surety company, will be called plaintiff herein and respondent, a bank, will be called defendant. Plaintiff had executed a surety bond in favor of the Continental Construction Company, herein called Continental, promising, for a consideration, to indemnify it against loss by reason of the dishonesty of its employees. The amount of the surety coverage was $100,000, and among the employees whose dishonesty was insured against was one Chaney, a pay-roll clerk. It was the custom and duty of the field foreman on the job to compile, semimonthly, a list of the names of field employees, rate of pay, and time worked, and forward same to the pay-roll department in Kansas City, where Chaney compiled summaries of same, prepared checks in accordance with said summaries, and took the whole to the proper company officials for verification and signature of pay checks. Beginng August 30, 1930, Chaney began adding the names of former employees, who were no longer working, to the time sheets sent in by the foreman, carrying such names over to the summary, and preparing checks payable to them. The proper officers would innocently sign said checks, together with those of regular employees. Chaney would then forward checks of regular employees to the proper destination and would abstract the checks of former employees so prepared, forge the indorsement of the named payees, and present them to defendant, the depository of Continental, where they were paid to Chaney by defendant, and charged to Continental's account. The checks sued on total the sum of $1,516.75, and all were cashed at window # 4 of defendant. The first such check cashed, together with seven others, bore Chaney's own indorsement in addition to the forged indorsement of the payee named therein. Defendant knew Chaney, but innocently

cashed said checks in regular course of business, believing them to be genuine in every respect. Continental discovered its loss, notified plaintiff, and, upon forms supplied by plaintiff, submitted detailed proof thereof, accompanied by signed confessions of Chaney. On or about January 15, 1931, plaintiff indemnified Continental in full for the Chaney loss, first having demanded of defendant in the name of Continental, that it restore to Continental's account the amount of Chaney's peculations. Upon payment of the loss, Continental signed a release of plaintiff on form submitted by it. Immediately thereafter Continental paid plaintiff the required premium therefor and plaintiff increased its coverage back to $100,000, as it had been before paying the Chaney loss. About a year thereafter plaintiff sought, and received from Continental's successor, an assignment of its claim against all other parties, including defendant, by reason of its losses due to Chaney's forgeries and embezzlement.

On a trial to the court without jury, judgment was for defendant and plaintiff appeals. Several assignments of error are urged but they boil down to whether or not plaintiff was entitled to judgment on the above facts, practically all of which were agreed upon or were supported by documentary evidence. The appellate court should affirm a judgment, if possible, on any theory. [Ralston Purina Co. v. King et al., 101 S. W. (2d) 734.] In a case such as this, if the judgment was for the right party, it will not be disturbed on appeal, even though the trial court arrived at the judgment entered on a wrong theory. [Aloe v. Fidelity Mut. Life Ins. Assn., 164 Mo. 675, l. c. 700; Wilhelm v. The Security Benefit Assn. K. C. Court of Appeals, 104 S. W. (2d) 1042.]

Defendant seeks to sustain the judgment on the theory that the best position plaintiff can take is that it stands in the shoes of Continental, either by assignment or subrogation, (although it claims that the assignment, having been executed a year after a simple release was executed, conveys no more rights than the original release conveyed; and asserts that plaintiff could not, because of lack of equity, become subrogated to any rights Continental may have had as against defendant), and that Continental itself, at the outset, had a choice of two remedies, the one by pursuing the embezzler and his surety, and the other by pursuing the bank; and that the two remedies are opposed to each other in theory and the election to pursue one remedy prohibited it, or any successor to its rights, from pursuing the other.

There is no doubt but if there are two or more inconsistent remedies available, the election to pursue the one is a bar to any suit based upon the other. That is well settled law in this State. [Tower et al. v. Compton Hill Improvement Co., 192 Mo. 379, l. c. 393, 394;

The Johnson-Brinkman Commission Co. v. The Mo. Pac. Railway Co., 126 Mo. 344.] In the latter case, which had gone from this Court to the Supreme Court on *Certiorari,* the court said, on page 349: ''It is well settled law that where a party has the right to pursue one of two inconsistent remedies, and he makes his election, and institutes his suit, in case the action thus begun is prosecuted to final judgment, *or the plaintiff has received anything of value under a claim thus asserted,* he cannot thereafter pursue another and inconsistent remedy.'' (Italics ours.) ''. . . election of remedies is the adoption of one of two or more co-existing remedies, with the effect of precluding a resort to the others.'' [20 C. J., page 3, section 1.] It is said that, while election of remedies is but another name for estoppel, yet it differs in some respects, one of which is that the part invoking it as a defense need not show that he will suffer disadvantage if his adversary be not required to stand by his election; he may even profit by reason of said election. But the doctrine of election of remedies, or of waiver of other existing remedies, as it is sometimes called, can only properly be invoked where an election has been made as between two or more in consistent remedies. [20 C. J., pages 3 and 4.] Once an election has been made, and a party has obtained full satisfaction from one remedy, his cause of action ends and he can assert it no further. [20 C. J., page 5.] The rule is stated to be that when full satisfaction has been had from one of two or more inconsistent remedies, a party can no longer assert his cause of action through another. [9 R. C. L., pages 960, 961.] To summarize: The weight of authority in this and other jurisdictions seems unquestionably to be that when one elects to pursue one of two or more inconsistent remedies, with full knowledge of all facts, and receives full satisfaction therefrom, he can no longer assert his cause of action and his adversary may assert the election as a defense even though such adversary has suffered no detriment, and may have, in fact, profited thereby.

When Continental obtained full knowledge of all the facts of Chaney's forgeries and embezzlement, including the nature and amount of its loss, which it did prior to January 15, 1931, it had open to it two remedies. It could have demanded payment of its money from defendant on the theory that when defendant paid the checks on forged indorsements of Chaney the bank paid out its own money and not that of Continental. Since defendant had received Continental's money on deposit and had never been legally authorized to pay it out, it still had Continental's money and must account to Continental therefor. [Midland Savings & Loan Co. v. Tradesmen's Natl. Bank, 57 Fed. (2d) 686, l. c. 689; 7 C. J. 683, 684, sec. 412; Union Biscuit Co. v. Springfield Grocery Co., 143 Mo. App. 300, l. c. 307; 3 R. C. L. 542, sec. 171; 7 Am. Jur. 430, sec. 593.] Or it could have affirmed the act of the bank in pay-

ing out the money on a forged indorsement and, upon the theory that Chaney had its money, it could have pursued Chaney and sought and obtained the return of its money embezzled by him. [Fowler v. Bowery Savings Bank, 21 N. E. (N. Y.) 172, l. c. 173; Jones v. First Nat. Bank of Lincoln, 90 N. W. (Neb.) 912, l. c. 914.]

The two thories are inconsistent with each other. See above citations, especially the last two in the preceding paragraph. On January 15, 1931, either defendant had Continental's money and was liable to it for money had and received, or Chaney had it and was liable for money had and received. Obviously, both could not have the same money at the same time. Continental could have proceeded against either, but could not go two ways at the same time. As the Scotch law is said to have it, one cannot both approbate and reprobate at one and the same time. Being in this position, it chose or elected, to pursue its money in the hands of Chaney. It notified plaintiff that the sums of money herein sued on "have not been paid over or satisfied in any way whatever to the said Employer, except as herein stated, have been fraudulently misappropriated by the said employee to his own use and benefit with the intent to deprive the said employer of same, notwithstanding that due and legal demand has been made by the said Employer upon the said Employee for the same." Thus it will be seen that Continental took the position that Chaney had its money, demanded return of same from him, and claimed that he had converted it to his own use. Failing to get it from Chaney, it made demand upon Chaney's bondsman, plaintiff, who had contracted with Continental for a consideration, to indemnify the latter for any loss occasioned by Chaney's embezzlement. Chaney could not be liable to Continental upon any theory of embezzlement unless the money alleged to have been embezzled was the property of Continental. That is hornbook law.

When Continental, in possession of all of the facts, made demand, and when plaintiff, fully advised of the facts, paid the loss it had contracted to pay, the election of Continental was completed. Continental could not thereafter assert its claim against defendant, and, by no theory of reason or logic can plaintiff be in a better position than Continental in this respect. The election of Continental to pursue to a successful conclusion one of two inconsistent remedies estops plaintiff from further asserting the claim. The result reached hereby is not only logical, but it is just and equitable; and the goal ever sought by the law is justice and equity, reached by logical reasoning.

The judgment is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion by SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.