**UNITED STATES FIDELITY & GUARANTY CO. v. FIRST NAT. BANK IN DALLAS, TEX., et al.**

No. 12249.

United States Court of Appeals
Fifth Circuit.

Jan. 11, 1949.

Rehearing Denied Feb. 15, 1949.

WALLER, Circuit Judge, dissenting in part.

Curtis White, of Dallas, Tex., for appellant.

John Touchstone, Chandler Lloyd, Thomas G. Murnane and W. C. Gowan, all of Dallas, Tex., for appellees.

Before HOLMES, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

United States Fidelity & Guaranty Co. brought this suit to recover from John H. Beall and the First National Bank in Dallas, Texas, the amount which it, as insurer of employees of the American Liberty Pipe Line Co., paid to that company in settlement of liability resulting from losses sustained by the Pipe Line Co. on its checks drawn on the bank and bearing endorsements of the names of the payees forged by Beall, an employee of the Pipe Line Co. By third-party complaints, those individuals, firms, and banks who had endorsed the checks after Beall were brought in and made parties to the suit.

The facts are not in dispute and may be summarized as follows: Beall was employed in the accounting department of the Pipe Line Co. from February 1944 to April 1946. He was in charge of a suspense ledger in which appeared the names of parties to whom oil payments were due by the Pipe Line Co. and whose addresses were unknown. It was his duty to locate the parties, obtain proper checks from those in authority, and send or deliver the checks to them. From August 1944 to April 1946, he caused to be issued some forty-six checks payable to various individuals to whom the Pipe Line Co. owed money for royalties. The checks were drawn on the First National Bank in Dallas. Beall forged the names of the payees, cashed the checks at local stores and banks in Dallas and the vicinity, and applied the proceeds to his own use. The First National Bank paid the checks on presentation and charged them to the account of the Pipe Line Co. During the period of Beall's employment, the Pipe Line Co. carried insurance with the United States Fidelity & Guaranty Co. which protected it against loss up to $25,000 through larceny, forgery, or other dishonest or fraudulent acts of any of its employees. After discovering the facts, the Pipe Line Co. called upon the bonding company to make good the shortage. After investigation, the United States Fidelity & Guaranty Co. paid the loss and took a written release of its own liability and an assignment of the Pipe Line Co.'s claim against Beall, the First National Bank, and the other endorsers of the checks.[1] Three days after this settlement, the bonding company made a

---

[1] The release and assignment reads as follows:

"The State of Texas,
County of Dallas.

Know All Men By These Presents: That American Liberty Pipe Line Company, a corporation, of Dallas, State of Texas, in consideration of the payment by the United States Fidelity and Guaranty Company, a corporation, of the sum of $3,459.42, the receipt of which is hereby acknowledged, does hereby release, acquit, exonerate and discharge the United States Fidelity and Guaranty Company, its successors and assigns, from all actions, suits, claims, damages and liabilities whatsoever that it, the said United States Fidelity and Guaranty Company, has incurred by reason of losses sustained by the American Liberty Pipe Line Company due to larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wilful misapplication, or other dishonest or fraudulent act or acts, of John H. Beall, our former employe, under and by virtue of that certain comprehensive, dishonesty, disappearance, and destruction policy, dated January 1, 1946, issued by said United States Fidelity and Guaranty Company, naming American Liberty Pipe Line Company, among others, an assured.

It is not intended by this agreement of settlement and release, executed by American Liberty Pipe Line Company to United States Fidelity and Guaranty Company, to release any other person, firm, corporation, association or bank, than the United States Fidelity and Guaranty Company, which may now be liable to the American Liberty Pipe Line Company on any cause of action which the said American Liberty Pipe Line Company may have against said person, firm,

demand for payment upon the First National Bank, and some months later it filed the present suit against Beall and the bank. It claimed that upon payment of the loss it became subrogated to the rights of the Pipe Line Co. to proceed against Beall and the bank, and, in addition, that it acquired the rights of the Pipe Line Co. by written assignment. Beall admitted liability, but the bank and the third-party defendants denied liability and defended mainly on two grounds: (1) that plaintiff's claim was barred by the failure of the Pipe Line Co. to notify the bank in writing, within one year after receipt of its cancelled checks, that certain of them were forged and unauthorized, and (2) that the Pipe Line Co., having elected to recover from the surety of the defaulting employee, was bound by its election, as was the surety company holding under it, and could not thereafter pursue an inconsistent remedy against the bank. Both defenses were sustained by the court below, and judgment was entered against Beall. From that judgment, the bonding company prosecuted this appeal.

While other assignments of error are presented, the main assignments have to do with the correctness of the lower court's ruling on the limitation period and the election of remedies by which recovery against the bank was denied. We shall consider them in the order named.

Article 342—711, of Vernon's Civil Statutes of Texas,[2] which the court below held prevented recovery against the bank, has not been interpreted by any Texas appellate court so far as we can find; however, it is similar in its context to statutes passed by most of the other States. It provides that the drawee bank be given written notice by the depositor within one year if a check charged to his account is forged, unauthorized, raised, or altered. Such statutes have been held, almost without exception, to apply to forged or altered items but not to forged endorsements, the reason being that a depositor has no duty to investigate or to report forged endorsements; the drawee bank must determine for itself whether the endorsement is genuine or forged. 7 Am. Jur., pp. 366-367; McCornack v. Central State Bank, 203 Iowa 833, 211 N.W. 542, 52 A.L.R. 1297; Detroit Piston Ring Co. v. Wayne County & Home Savings Bank, 252 Mich. 163, 233 N.W. 185, 75 A.L.R. 1273.

corporation, association or bank, growing out of the dishonest or fraudulent act or acts of John H. Beall.

In consideration of the above recited payment by the United States Fidelity and Guaranty Company to the American Liberty Pipe Line Company, American Liberty Pipe Line Company, a corporation, does hereby assign and set over unto the said United States Fidelity and Guaranty Company, its successors and assigns, to its own proper use and benefit, any and all claims, demands and causes of action of whatsoever kind, which it has or may have against John H. Beall, or against the indorsers of forged indorsements placed on certain checks by the said John H. Beall, and against the First National Bank in Dallas on which said checks were drawn, and by means of which the said John H. Beall defrauded American Liberty Pipe Line Company of the sum of $3,459.42.

And the said American Liberty Pipe Line Company hereby authorizes the United States Fidelity and Guaranty Company, in its own name, to proceed against the said John H. Beall, or the First National Bank in Dallas, or any of the indorsers of forged indorsements on a series of checks drawn on the First National Bank in Dallas, and by means of which John H. Beall defrauded the American Pipe Line Company, for the collection of any and all claims, demands or causes of action which the said American Liberty Pipe Line Company may have against said John H. Beall, the First National Bank in Dallas, or said indorsers.

Executed: this 9th day of December, 1946, at Dallas, Texas.

American Liberty Pipe Line Company,
By (S) D. R. Zachry,
Vice-President."

2 "A bank may notify a depositor by mail at his address as reflected by the records of the bank to call for cancelled items charged to his account, or may mail such cancelled items to the depositor at such address. No depositor shall be permitted to dispute any charge to his account on the ground that the same is based upon a forged, unauthorized, raised or altered item unless, within one (1) year from the time the check was paid, he shall notify the bank in writing that the item in question is forged, unauthorized, raised, or altered. Acts 1943, 48th Leg., p. 154, ch. 97, subch. VII, art. 11."

Construing the Texas statute as such statutes are generally construed, a check is forged when the name of the depositor as maker is forged; it is raised or altered when the amount as originally executed is increased or when the body as originally executed is changed. It is unauthorized when any or all of these things are done or the depositor's name as maker is signed by a purported agent without authority. Hence, we agree with appellant that the court below erred in holding the limitation period in art. 342—711 applicable to a forged endorsement.

■■■■ The question remaining has to do with the election of remedies. What is often spoken of in judicial opinions as a choice between remedies is in reality a choice between substantive rights. "An election between substantive rights goes not to the form, but to the substance, affecting some right selected." 18 Am.Jur., p. 131. The essential conditions in an election of remedies, as that term is generally used, are: (1) the existence of two or more remedies, (2) an inconsistency between such remedies, and (3) the choice of one of them and the actual pursuit of one to the exclusion of the other or others.[3] In Texas, it would seem, for the doctrine of election of remedies to have effect and to justify the conclusion that the suitor is not entitled to pursue an alternative remedy, it must appear that he has received some benefit or that his opponent has suffered some loss or detriment. 15 Tex.Jur., p. 831. Whether appellant rely on subrogation to the rights of the Pipe Line Co. or on an assignment of that company's rights to recover from the drawee bank, appellant stands in the shoes of the Pipe Line Co. and may assert only such rights as the Pipe Line Co. may assert. The first inquiry, therefore, is, What right may the Pipe Line Co. assert against the drawee bank?

■■■■ In Texas as elsewhere, the making and acceptance of an ordinary deposit creates between the bank and the depositor the relation of debtor and creditor, the title to the money or thing deposited passing to the bank. 6 Tex.Jur., p. 231. A bank may not charge to a depositor a check upon which the endorsement of the payee is forged; if it does, the depositor may compel restitution, 6 Tex.Jur., p. 308, unless negligence or fault of the depositor has misled the bank. While in this case the forgeries extended over a period of approximately two years, nothing came to the attention of the Pipe Line Co. to put it on inquiry. In such want of notice, it could rely upon the vigilance of the bank in detecting forged endorsements. Nor can it justly be said that the company was negligent in placing the checks in the hands of Beall for delivery. A corporation acts through its agents, and it may assume, until the contrary at least is suggested, that its agents are honest.

■■■■ When the Pipe Line Co. discovered its loss and obtained full knowledge of all the facts of Beall's forgeries and embezzlements, it had open to it two remedies, based on alternative rights: (1) It could demand payment of its money from the drawee bank on the theory that when the bank paid the checks on forged endorsements of Beall the bank paid out its own money and not that of the Pipe Line Co. or (2) it could affirm the action of the bank in paying out the money, and, upon the theory that Beall had embezzled its money, could have pursued, as it did, Beall and his surety, and from Beall's surety obtained a return of the money embezzled by Beall. Either the drawee bank had

---

[3] "* * * 'inconsistency of remedies' is not in reality an inconsistency between the remedies themselves, but must be taken to mean that a certain state of facts relied on as the basis of a certain remedy is inconsistent with, and repugnant to, another certain state of facts relied on as the basis of another remedy. If a party, therefore, invokes a remedy appropriate to a certain state of facts and there exists another remedy appropriate to a different state of facts, his invocation of the first remedy is an election. Whether coexistent remedies are inconsistent is to be determined by a consideration of the relation of the parties with reference to the right sought to be enforced as asserted in the pleadings. Two modes of redress are inconsistent if the assertion of one involves the negation or repudiation of the other, as where one of them admits a state of facts and the other denies the same facts * * *." 18 Am.Jur., § 12, p. 135.

the Pipe Line's money and, as debtor, was liable for it, or Beall had obtained it and embezzled it, and he and his surety were liable for it. The two rights rest upon theories which are wholly inconsistent with each other; and the election of the Pipe Line Co. to pursue to a successful conclusion its right against the bonding company [4] estopped it, we think, from asserting any claim against the drawee bank. Insurance Co. of North America v. Fourth National Bank, 5 Cir., 28 F.2d 933; United States Fidelity & Guaranty Co. v. Fidelity National Bank & Trust Co., 232 Mo.App. 412, 109 S.W.2d 47.

Since the exact question, however, does not seem to have been passed on by any of the Texas appellate courts, we shall not rest our opinion solely upon the bar which resulted from the election and successful pursuit of an alternative right by the Pipe Line Co. but shall consider the rights of the appellant under subrogation and assignment out of the Pipe Line Co.

■ Subrogation is an equitable remedy, and, while a surety may become subrogated to the rights and remedies of the creditor against a third person, he stands, with respect to the right of recovery against a third person, upon a different footing from that upon which he would stand with respect to the right to recover from a principal. With respect to recovery from a principal, the right is absolute; as to a third person, it is conditional. Since subrogation seeks to place the charge where it ought to rest, by compelling payment by him who in equity owes it, such right will generally not be enforced against a third person where the equities of such third person are equal or superior to those of the surety in respect to the liability. 50 Am.Jur., §§ 111 and 112, pp. 754-755.

■ We are unable to see any particular in which the equities of the bonding company are superior to those of the drawee bank. Neither one was guilty of negligence so far as the record shows. The bonding company, for a consideration, guaranteed the faithful conduct of employees of the Pipe Line Co., hence enabled Beall to hold the position of trust which he occupied. The bank was acting consistently with banking business in paying checks the genuineness of which in all particulars it had no reason to doubt. The bank did not participate in Beall's wrongdoing; it was in no wise responsible for his default. Notwithstanding its innocence, its liability to the Pipe Line Co. was occasioned by Beall's fraud. Subrogation in behalf of a surety "is never applied against an innocent person wronged by the principal's fraud." American Surety Co. of New York v. Lewis State Bank, 5 Cir., 58 F.2d 559, 561.

■ What was said by the Ninth Circuit Court in American Surety Co. v. Bank of California, 133 F.2d 160, 164, in dealing with a similar situation, is particularly apposite:

"* * * In the instant case [the] Bank was liable, if at all, not because it was a wrongdoer but because of its absolute liability on an implied contract to repay money on deposit only to the persons to whose order the checks are drawn. The checks improvised by Crowe [the defaulting employee of the depositor] were cashed in the ordinary course of [the] Bank's business. No indication is found that [the] Bank knew any facts which would suggest the fraud of an employee of its depositor. Insurers [the bonding company], on the other hand, expressly contracted to secure Interior [the depositor] against losses caused by a dishonest employee, such as

---

[4] As a witness, the attorney for the Pipe Line Co. was asked:

"Q. You satisfied yourself not later than December 9, 1946 on the facts pertaining to this entire transaction in which Mr. Beall had been involved? A. Yes, sir.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. You realized at that time you also had a claim which you could assert against the First National Bank, as your depository, didn't you? A. Yes, sir.

"Q. You elected to assert your claim, however, against your bonding company, didn't you? A. Yes, sir.

"Q. And did receive a payment in full from it? A. Yes, sir.

"Q. Your bonding company, on the total amount of your loss, with reference to the Beall transaction? A. The total amount we claimed, yes, sir."

He was also asked if the Pipe Line Co. made a demand against the bank, and he answered that it did not.

264

Crowe. They accepted the responsibility for such losses for a compensation, the premiums paid to them, which they have retained. Both they and [the] Bank are innocent of any wrongdoing, although all were liable to Interior * * * on the basis of independent contract obligations— the implied contract of [the] Bank to pay only to those entitled, and the contracts of Insurers to indemnify against losses caused by a defalcating employee. Since Insurers expressly, voluntarily and for a compensation guaranteed against loss in the exact situation involved, the equity in the situation cannot lie in favor of Insurers and against [the] Bank for the payment made. Commercial Casualty Ins. Co. v. Petroleum Pipe Line Co., 10 Cir., 83 F.2d 412; Washington Mechanics' Sav. Bank v. District Title Ins. Co., 62 App.D.C. 194, 65 F.2d 827; New York Title & Mortgage Co. v. First National Bank, 8 Cir., 51 F.2d 485, 77 A.L.R. 1052; Meyers v. Bank of America N. T. & S. Ass'n, 11 Cal.2d 92, 77 P.2d 1084; Louisville Trust Co. v. Royal Indemnity Co., 230 Ky. 482, 20 S.W.2d 71; Northern Trust Co. v. Consolidated Elevator Co., 142 Minn. 132, 171 N.W. 265, 4 A.L.R. 510; American Central Ins. Co. v. Weller, 106 Or. 494, 212 P. 803."

When the appellant paid the Pipe Line Co., it took a release of its liability and an assignment of the Pipe Line's claim against Beall, the drawee bank, and all endorsers. See footnote 2. The executed document first expressly releases and discharges the appellant from all liability by reason of the dishonest actions of Beall under the indemnity policy issued by the appellant to the Pipe Line Co.; then it embodies an assignment from the Pipe Line Co. to appellant of all of the Pipe Line Co.'s claims against other parties. It is self-evident that when the bonding company paid the Pipe Line Co. the amount of Beall's embezzlement, there remained in existence no enforceable claim by the Pipe Line Co. against the drawee bank which the Pipe Line Co. could assign to appellant. As pointed out in American Surety Co. v. Bank of California, supra:

" * * * The distinction between subrogation and assignment is clearly set forth in 6 C.J.S., Assignments, § 3, page 1051: 'So also subrogation presupposes an actual payment and satisfaction of the debt or claim to which the party is subrogated, although the remedy is kept alive in equity for the benefit of the one who made the payment under circumstances entitling him to contribution or indemnity, while assignment necessarily contemplates the continued existence of the debt or claim assigned.'"

Appellant had no right of subrogation as against the drawee bank, nor did it acquire by the assignment any cause of action against it.

The judgment appealed from is

Affirmed.

WALLER, Circuit Judge (concurring in part and dissenting in part).

I concur in the holdings of the majority opinion: (1) that Article 342—711 of the Civil Statutes of Texas did not prevent a recovery against the bank for failure of the Pipe Line Company to notify the bank in writing that certain of the endorsements were forged and unauthorized; (2) that the bonding company, generally speaking, stands in the shoes of the Pipe Line Company; (3) that since the cause of action here is one based on subrogation, and since subrogation will not be applied so as to allow recovery against the bank, where the bank was innocent of any complicity in the fraud committed by the bonding company's principal, the equities of the situation are in favor of the bank, under the holding in our case of American Surety Company of New York v. Lewis State Bank, 5 Cir., 58 F.2d 559.

I also concur in the result because of the reasons set forth above, and if the case had been decided wholly upon those reasons, I would be in full concurrence. The opinion, however, goes further than seems necessary to a decision of the case and makes two pronouncements that, I think, are unsound and one of which will result in confusion and detriment.

The first is the statement that the Pipe Line Company, in calling upon the bonding company to carry out its contract with the Pipe Line Company and make the latter whole for Beall's dishonesty, thereby made

an election of a remedy that is inconsistent with the judicial remedy of the bonding company in this proceeding against the employee—the surety company's principal—for his forgery of the endorsements of the checks and his embezzlement of the proceeds therefrom, and against the bank, the custodian of the Pipe Line Company's funds, for paying out such funds upon such false and fraudulent endorsements.

The second is the holding that: "Appellant had no right of subrogation as against the drawee bank, nor did it acquire by the assignment any cause of action against it."

I think that the first holding is erroneous in two respects: (a) that it fails to observe the distinction between the Pipe Line Company's *contractual right* to be paid by the surety company and *judicial remedies* available through court action; and (b) that even if the acceptance of a right due it under its contract had been the election of a remedy, or if it had been necessary for the Pipe Line Company to bring suit against the surety company—which it did not do here—and it had at the same time brought suit against the defalcating employee and the negligent bank, the remedies would have been merely cumulative but not inconsistent, and even if inconsistent were permissive under Federal Rules of Civil Procedure, rule 8(e) (2), 28 U.S.C.A.

Moreover, a "remedy" is generally defined to refer to methods of procedure, or procedures in court, as distinguished from substantive or contractual rights.

In Young v. Staman, La.App., 200 So. 187, the Court held that a "remedy" is the means employed to enforce a right or redress an injury. See also Paulsen v. Reinecke, 181 La. 917, 160 So. 629, 97 A.L.R. 1184.

In Re Wynn's Estate, 311 Ill.App. 190, 35 N.E.2d 702, 704, the Illinois Court of Appeals held that:

"The word 'remedy,' is always interpreted to refer to methods or procedure as distinguished from substantive rights. The term 'remedy,' is taken to cover forms of action, methods of procedure, rules of evidence, and all other details of practice and procedure as distinguished from rules pertaining to substantive rights."

In Bauer v. Neuzil, 66 Cal.App.2d Supp. 1020, 152 P.2d 47, 48, it was held that:

"The term 'remedy' in legal sense signifies and is limited to judicial means or method for enforcing cause of action or right or redressing a wrong."

In Vol. 2, Bouv.Law Dict., Rawle's Third Revision, page 2870, remedy is defined as: "The means employed to enforce a right or redress an injury."

The law in Texas seems to be to the same effect.

In Thomas v. Western Union Tel. Co., 25 Tex.Civ.App. 398, 61 S.W. 501, 502, the Court of Civil Appeals of Texas said:

"By 'remedy' in this connection is meant such matters as the character and form of action, the admissibility of evidence, procedure, the mode of redress, limitations, execution of judgments, and the like. The right acquired, and the obligations created, and all matters pertaining to the essence of the contract, are determined by the lex loci contractus."

thus showing a distinction in the mind of the Court between contractual rights and methods of redress.

In Town v. Inner Shoe Tire Co., 260 S.W. 1078, 1080, the Texas Civil Court of Appeals held that:

"'A cause of action' is distinguishable from the 'remedy,' which is simply the means by which the obligation or corresponding action is effectuated, and also from the 'relief' sought."

In Seamans Oil Co. v. Guy, 114 Tex. 42, 262 S.W. 473, 474, the Commission of Appeals of Texas said:

"While the courts of our state have not clearly recognized it, yet there is an important distinction between an election of rights and an election of remedies. One is a choice between inconsistent substantive rights, while the other is a choice between forms of action or procedure."

In 15 Tex.Jur., page 823, we find the same statement as that last quoted.

In 18 Amer.Jur., § 6, page 131, it is said:

"Often, what is spoken of in judicial opinions as a choice between remedies is in reality a choice of alternative substantive rights. The distinction is one not infre-

quently obscured, and yet it is important that it is heeded. An election between substantive rights goes, not to the form but to the substance, affecting some right selected. Whereas an election of remedies or forms of action or procedure does not necessarily involve a choice between existing substantive rights, since a form of action is but a means of administering justice, rather than an end in itself. The doctrine of election of remedies applies in order to protect one from vexatious litigation, while the rule as to election of substantive rights has to do with the actual status of some property or contractual rights."

In this case I think that the Pipe Line Company, in calling on the bonding company to make good the loss, was not pursuing a *remedy* but in the exercise of a substantive, contractual *right,* which right came into being by the wrongs of Beall, the employee, and by the bank's "having wrongfully charged the amounts of said checks to the account of American Liberty Pipe Line Company." There is nothing inconsistent in suing the perpetrator of the forgery and the bank that permitted it and who wrongfully charged the forgeries to its customer's account. The suit here is one in tort.

Before the adoption of Rule 8(e) (2) of Federal Rules of Civil Procedure, a litigant might not have asserted that a contract was void and at the same time asserted that the contract was valid without being guilty of fatal inconsistency. However, it seems now that this rule allows a plaintiff to "state as many separate claims * * * as he has regardless of consistency and whether based on legal or on equitable grounds or on both."[1]

However, even though the rule still persisted against the filing of inconsistent remedies, and even if the Pipe Line Company could not have in one suit ratified the transaction as valid and in another suit claimed that the same transaction was fraudulent,[2] we have no such situation in the present case. At all times the Pipe Line Company, as well as its subrogee and assignee, the bonding Company, have contended that the endorsements were forged and fraudulent. A proceeding seeking to compel an attorney to disgorge embezzled funds is not inconsistent with holding a bank upon a forged endorsement. Rosacker v. Commercial State Bank, 191 Minn. 553, 254 N.W. 824, 94 A.L.R. 551. See also Borserine v. Maryland Casualty Co., 8 Cir., 112 F.2d 409. There has never been any contention that Beall was without authority to draw checks. The contention is, and always has been, that he had no authority to forge endorsements, and that the bank "wrongfully charged" the amounts thereof to the account of the Pipe Line Company.

In 18 Amer.Jur. 136, Sec. 13, it is said:

"The doctrine of election of remedies being predicated upon the existence of co-existing and inconsistent remedies, it fol-

---

[1] The adoption of Rule 8(e) (2) is probably in recognition of the statement in Friederichsen v. Renard, 247 U.S. 207, 38 S.Ct. 450, 452, 62 L.Ed. 1075, that:

"At best this doctrine of election of remedies is a harsh, and now largely obsolete rule, the scope of which should not be extended, * * *."

This statement was quoted with approval by this Court in Re Rose, D.C., 39 F.2d 242, 243, wherein Judge Hutcheson, speaking for the Court, also said:

"The doctrine of election has never been a favorite in equity, and is only applied with favor in cases where the elements of estoppel are present, or where there is such inconsistency in the two claims as that the assertion of both of them amounts to stultification."

In Nuveen v. Board of Public Instruction, 5 Cir., 88 F.2d 175, 180, this Court,

speaking through Judge Sibley, said:

"An election of remedies may be spoken of when the true right of the litigant is plain and he is making a choice of paths to reach it; but what is most frequently called an election of remedies is really an election or choice of rights, language becoming confused by the ancient practice in law of testing all rights by the forms of remedy. The doctrine of election has been said not to be a favorite of equity, Friederichsen v. Renard, 247 U.S. 207, 38 S.Ct. 450, 62 L.Ed. 1075, * * *".

[2] Cf. Cary v. Hardy, D.C., 1 F.R.D. 355; Catanzaritti et al. v. Bianco, D.C., 25 F.Supp. 457; United States to Use and Benefit of Foster Wheeler Corporation v. American Surety Co., D.C., 25 F. Supp. 700.

lows as a necessary corrollary that not every election of remedies is irrevocable, for two or more remedies are often given to redress the same wrong and are, therefore concurrent. It is well settled that the rule of conclusive election of remedies does not apply where the available remedies are cumulative and consistent. It is permissible to follow these remedies or reliefs independently, in some cases, to judgment, although only one satisfaction can be had."

In the same volume, on page 135, Sec. 12, it is said:

"Two modes of redress are inconsistent if the assertion of one involves the negation or repudiation of the other, as where one of them admits a state of facts and the other denies the same facts or where the one is founded upon the affirmance, and the other upon the disaffirmance, of a voidable transaction."

Since I deem erroneous the holdings of the majority that there was an election of remedies and that the so-called remedies are inconsistent, and since such holdings are contrary to the spirit of the Federal Rules of Civil Procedure, needlessly attempt to invoke a rule that has so often been condemned, and are not necessary to a decision in this case, I am withholding my concurrence to that portion of the majority opinion dealing with the election of remedies.

As stated hereinabove, I am also in disagreement with the statement in the main opinion that: "Appellant had no right of subrogation as against the drawee bank, nor did it acquire by the assignment any cause of action against it." In addition to the above quotation the main opinion also states that: "It is self-evident that when the bonding company paid the Pipe Line Co. the amount of Beall's embezzlement, there remained in existence no enforceable claim by the Pipe Line Co. against the drawee bank which the Pipe Line Co. could assign to appellant."

The release and assignment in question contains the following provisions pertinent to the assignment:

"It is not intended by this agreement of settlement and release * * * to release any other person, firm, corporation, association or bank * * * on any cause of action which the said American Liberty Pipe Line Company may have against said person, firm, corporation, association, or bank, growing out of the dishonest or fraudulent act or acts of John H. Beall.

"In consideration of the above recited payment * * * American Liberty Pipe Line Company * * * does hereby assign and set over unto the said United States Fidelity and Guaranty Company * * * any and all claims, demands, and causes of action of whatsoever kind, which it has or may have against John H. Beall, or against the indorsers of forged indorsements placed on certain checks by the said John H. Beall, and against the First National Bank in Dallas on which said checks were drawn, * * *.

"And the said American Liberty Pipe Line Company hereby authorizes the United States Fidelity and Guaranty Company, in its own name, to proceed against the said John H. Beall or the First National Bank in Dallas, or any of the indorsers of forged indorsements on a series of checks drawn on the first National Bank in Dallas * * * for the collection of any and all claims, demands or causes of action which the said American Liberty Pipe Line Company may have against said John H. Beall, the First National Bank in Dallas, or said indorsers."

Thus it is that in the settlement between the bonding company and the Pipe Line Company it was agreed that the cause of action against Beall and the several banks should not be canceled but should be transferred to the bonding company and continue in existence. There is no law against the making of such a transfer.

The majority opinion contains this statement, to which I cannot concur: "It is self-evident that when the bonding company paid the Pipe Line Co. the amount of Beall's embezzlement, there remained in existence no enforceable claim by the Pipe Line Co. against the drawee bank which the Pipe Line Co. could assign to appellant." In making this statement the majority opinion fails to note that one of the legal incidents of the assignment of a cause of action is to provide for the continued exist-

ence of the claim or debt assigned; that is to say, where one pays a debt for which he and others are liable and takes an assignment thereof as against others, the purpose and the effect of ths assignment is to continue the obligation in existence and to transfer it to the one who had paid the primary obligation of another. An assignment continues the same debt in existence[3] while subrogation creates a new right of action in the subrogee.[4] The Texas case of Fenner v. American Surety Company, Tex.Civ.App., 156 S.W.2d 279, 288, is all the authority needed on this question. The Court there said:

"Upon the payment by appellee (the surety company) to the American National Bank of the amount of the loss sustained by it by reason of Lundelius' breach of faith, as it was required to do by the terms of its fidelity bond, the bank assigned to appellee all of its rights in the premises, and appellee, *by this assignment* as well as in equity, was subrogated to the rights and remedies of the bank for the recovery of its loss. * * * The bank, and therefore the appellee *as its assignee* and by virtue of its rights of subrogation, had the right to recover from anyone legally liable therefor the actual loss sustained by the bank." (Emphasis supplied.)

In City National Bank of Houston v. Moody, 115 S.W.2d 745, the Civil Court of Appeals of Texas again held that where a surety has paid the debt of his principal, he has the election to pursue his legal remedies and may bring an action *in assumpsit* or on the obligation applied by law in his favor for reimbursement by the principal, or the surety can prosecute an action on the very debt itself, and in either event the surety stands in the shoes of the original creditor as to any securities and rights of priority. See also: Patterson v. Fuller, Tex.Civ.App., 110 S.W.2d 1230; Phillips Investment Company v. Road District No. 18, Tex.Civ.App., 172 S.W.2d 707.

Indeed, the case relied upon by the majority, American Surety Co. v. Bank of California, 9 Cir., 133 F.2d 160, 165, points out the very distinction which I am seeking here to make between subrogation and assignment and calls attention to the fact that an assignment contemplates "the continued existence of the debt or claim assigned." Here the parties expressly agreed to continue the existence of the obligation. The holding of the majority that when the bonding company paid the Pipe Line the amount of the embezzlement there remained no enforceable claim that the Pipe Line could assign would render invalid every assignment where the consideration was the payment of an antecedent obligation. Such a holding would mean that sureties or insurance companies would not be justified in paying an obligation until the same had been reduced to judgment and the judg-

[3] Sands v. Hill, 55 N.Y. 18.

[4] See 6 C.J.S., Assignments, § 2, page 1051, wherein it is stated that:

"A release terminates and extinguishes the claim released, while an assignment merely transfers it, leaving it in full force and effect as to the party charged. Whether an instrument is an assignment or release is a question of intention as determined from the provisions thereof.

* * * * * *

"Subrogation, however, differs materially from an assignment. Subrogation is the act of the law, depending not upon contract, but upon the principles of equity, while assignment is the act of the parties, and depends generally on intention. So also subrogation presupposes an actual payment and satisfaction of the debt or claim to which the party is subrogated, although the remedy is kept alive in equity for the benefit of the one who made the *payment* under circumstances entitling him to contribution or indemnity, while assignment necessarily contemplates the continued existence of the debt or claim assigned. Subrogation operates only to secure contribution and indemnity, whereas an assignment transfers the whole claim."

In Texas there has been great diversity of opinion as to the right of a surety to be subrogated to the securities of a creditor as well as to the debt. The Supreme Court of Texas first adopted the rule that payment by the surety extinguished the primary obligation and that his only remedy against the principal was on an assumpsit, or on the implied promise of the principal to reimburse the surety, but this rule has been repudiated by later cases. See 39 Tex. Jur., page 796, Sec. 36.

ment assigned to them so as to be protected under Article 6248, Texas R.S.1925.[5] Such a holding will interfere with the settlement of personal injury cases where, as a part of the consideration, the right of action has often been assigned to the casualty company in order that it may, in turn, sue a third party. It is my thought that any assignment of a chose in action, made fairly and upon a valuable consideration, not only would not extinguish the obligation but would transfer it to the assignee, but that such an assignee could not then have sued in Federal Court on the assigned cause of action, under Sec. 41(1) [now § 1359], Title 28 U.S.C.A. The Pipe Line Company was a Texas corporation. The bank and Beall were Texas citizens. The Pipe Line Company could not have brought the action here against Beall and the bank and, therefore, it could not assign to the surety company any right to bring such action in the Court below. See Claiborne Parish School Board v. Fidelity & Deposit Co. of Maryland, 5 Cir., 40 F.2d 577, and American Surety Company of New York v. Lewis State Bank, supra. The lower Court had jurisdiction under a suit for subrogation because subrogation is not an assigned cause of action but one that equity creates in behalf of one who has, in duty bound, paid the debt of another. Assignment is the continuation of the same action and, therefore, unless the assignor were a resident of a state other than that of the defendants, the assignee could not have maintained the action in the Federal Court under the statute in force at the date of filing the suit. It is not necessary in this case to pass upon the question of the validity of the assignment and I must dissent to the far-reaching holding of the majority opinion that one who pays the debt of another and thereby discharges his own obligation cannot thereupon have assigned to him the right to sue such other.

I would affirm the case, but I would do so without further confusing the doctrine of election of remedies and without destroying the valid rights of innumerable assignees, as I am fearful the majority opinion will do.

Rehearing denied; WALLER, Circuit Judge, dissenting.

---

5 Art. 6248, Texas R. S. 1925, is as follows:

"When any person, being surety in any undertaking whatever, shall be compelled to pay any judgment, or any part thereof, or shall make any payment which is applied upon such judgment by reason of such suretyship, the said judgment shall not be discharged by such payment, but shall remain in force for the use of such surety, and shall be considered as assigned to such surety, together with all the rights of the creditor thereunder to the extent of such payment with the interest thereon; and such surety shall be entitled to have execution thereon in the name of the creditor for the use of such surety against the principal debtor for the clerk, or court, as the case may be, and costs, which execution shall be issued upon the application of such surety to the clerk, or court, as the case may be, and shall be levied, collected and returned as in other cases."